# UNITED STATES DISTRICT COURT

## IN THE DISTRICT OF IDAHO

| | |
|---|---|
| SAINT ALPHONSUS MEDICAL CENTER - NAMPA, INC., TREASURE VALLEY HOSPITAL LIMITED PARTNERSHIP, SAINT ALPHONSUS HEALTH SYSTEM, INC., AND SAINT ALPHONSUS REGIONAL MEDICAL CENTER, INC.<br><br>          Plaintiffs,<br><br>v.<br><br>ST. LUKE'S HEALTH SYSTEM, LTD.<br><br>          Defendant. | Case No. 1:12-CV-00560-BLW (Lead Case)<br><br>**MEMORANDUM DECISION AND ORDER** |
| FEDERAL TRADE COMMISSION; STATE OF IDAHO<br><br>          Plaintiffs,<br><br>v.<br><br>ST. LUKE'S HEALTH SYSTEM, LTD.; SALTZER MEDICAL GROUP, P.A.<br><br>          Defendants. | Case No. 1:13-CV-00116-BLW |

## INTRODUCTION

The Court has completed its full review of all the material sought to be sealed by the parties and third parties. In this decision, the Court identifies each document and portion of testimony that the parties and third parties want sealed, and explains its decision regarding each such request.

# BACKGROUND

Before trial started, the Court issued a Pretrial Order, recognizing that compelling reasons must exist to seal any part of the testimony and exhibits. *See Pretrial Order (Dkt. No. 209).* The parties had reached an agreement – approved by the Court – as to three categories of information that would be sealed and available only the attorneys. This material was designed as "Attorney Eyes Only" (AEO) and was defined as follows:

> 1. Current (within the last four years) documents referring to prices, costs, reimbursement rates, wages, compensation, budgets, projections or other financial information, not including documents that have been made public.
> 2. Current (within the last four years) documents discussing or referring to planning.
> 3. Current (within the last four years) documents referring to or discussing payor, employer, provider or network negotiations, negotiation strengths or weaknesses, bargaining power, or negotiation strategies or methodologies.

The parties were unable to agree on a fourth category, and the Court decided to resolve that on a case-by-case base as the issues arose. That fourth category is as follows:

> 4. Current (within the last four years) contracts with physicians or facilities and the terms of recent (within the last four years) physician practice or facility acquisitions or affiliations.

The Court approved this agreement of counsel and entered its Pretrial Order well ahead of trial to give the media a chance to file any objections prior to trial. No objections were filed, and the trial proceeded.

To accommodate the public and media, the Court made available daily redacted transcripts. The redactions concerned matters that "involved some combination of

sensitive negotiation strategy, confidential financial projections, or personal compensation information." *See Memorandum Decision (Dkt. No. 357).*

The trial proceeded for over a week without objection to this procedure, until the Associated Press (AP) filed its motion to intervene, seeking to unseal all documents and testimony. The Court held a hearing on the AP's motion on October 8, 2013, and granted the motion in part. *See Memorandum Decision (Dkt. No. 357).* In that decision, the Court (1) allowed the media outlets to intervene to argue the access issue; (2) directed the parties to file justifications for the material already sealed and, going forward, the material they request to be sealed; (3) authorized the AP's counsel to review all material, sealed or not, under the same obligation of confidentiality as the attorneys for the parties; and (4) indicated that the Court would review the submissions by the parties and make a final determination of whether compelling reasons exist for the sealings. *Id.*

As the trial proceeded, the Court became convinced that the original reasons for sealing certain material "appeared less compelling." *See Memorandum Decision (Dkt. No. 468)* at p. 2. Ultimately, the Court decided to issue its Findings of Fact and Conclusions of Law without any redactions. *Id.*

There remains sealed, however, portions of (1) testimony, (2) depositions, and (3) exhibits. The parties submitted extensive materials arguing that the sealed status of the documents and testimony should be maintained. A portion of that material is cited here to demonstrate the extensive review necessary to resolve this issue: *See Declarations of Schaefer (Dkt. Nos. 348 & Exhibits 1 & 2, 360 & Exhibit 1, 370 & Exhibit 1); Amended Supplemental Declaration of Randolph (Dkt. No. 449); Affidavit of Howard Young (Dkt.*

*No. 339-1); Primary Health Brief (Dkt. No. 297); Declaration of Dr. Peterman (Dkt. No.*

*297-1) & Supplemental Declaration (Dkt. No. 330); Micron Brief (Dkt. No. 304) &*

*Supplemental Declaration of Otte (Dkt. No. 328); Declarations of Barton (Dkt. No. 336*

*& 438); Declarations of Schafer (Dkt. Nos. 360 & 375); Declarations and Affidavits of*

*Westermeier (Dkt. Nos. 345-2, 367, 368, 379, 453 & 446); Declaration of Phillip (Dkt.*

*No. 386); Declaration of Powers (Dkt. Nos. 344 & 399); Affidavits of Julian (Dkt. Nos.*

*327, 359 & 378); Declarations of Diddle (Dkt. Nos. 334 & 350);* and *Affidavit of*

*Christian (Dkt. No. 346).*

While the Court was in the process of reviewing this material, the AP appealed to the Ninth Circuit and sought a Writ of Mandamus to open the entire case file. On April 8, 2014, the Ninth Circuit issued an Order noting that this Court was in the process of conducting its review. *See Order (Dkt. No. 494).* The Circuit denied the petition for the Writ of Mandamus without prejudice to the filing of a new petition if this Court had not completed its analysis by July 8, 2014. *Id.*

The Court has now completed its review of all the sealed material along with the requests of the parties and third parties to maintain the sealed status of those materials. For each item that they request to be sealed, the Court will determine whether it meets the "compelling reason" standard that is discussed further below.

## LEGAL STANDARD

There is a "strong presumption" in favor of access, and a party seeking to seal judicial materials must identify "compelling reasons" that outweigh the "public interest in understanding the public process." *Kamakana v. City & County of Honolulu,* 447 F.3d

1172, 1178-1180 (9th Cir. 2006). There may be compelling reasons to seal "business information that might harm a litigant's competitive standing." *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 598 (1978). But the "mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will, not, without more, compel the court to seal its records." *Kamakana*, 447 F.3d at 1178. With regard to non-litigants, while there is no presumption that their privacy requires sealing, the balancing test may reach that result, especially if the non-litigants are not involved in the litigation and their sensitive and confidential information has been involuntarily provided pursuant to subpoena. *See generally In re Roman Catholic Archbishop of Portland,* 661 F.3d 417, 424 (9th Cir. 2011) (reversing decision to publically release personnel file of 85-year-old priest who had retired, but affirming decision to release allegations of child abuse against another priest, still active, due to strong public interest in disclosure).

## ANALYSIS

The Court has used these legal standards to review all of the material that the parties and third parties seek to keep sealed. In large part, the Court cannot find compelling reasons to justify maintaining the sealed status for most of the courtroom testimony now under seal.

The analysis changes somewhat, however, for the exhibits. Many of the exhibits (1) contain sensitive personal information regarding named physicians concerning their compensation, productivity, or contractual terms of employment; (2) contain strategic and financial information concerning the parties and third parties that would be damaging if

revealed; (3) have only the faintest connection to the issues in the case and hence are not helpful to the public in understanding the case, and (4) were not important to the Court's decision. For this category of exhibits, there are compelling reasons to keep them sealed.

This is especially true with regard to the testimony and exhibits connected to the third parties that did not voluntarily participate and were subject to subpoena. These third parties include Micron, Imagine Health Network and Primary Health. Much of the information they were required to submit contains their highly confidential business strategies. This information was not important in the Court's decision and is not necessary to the public's understanding of the case. Given this, the balance tips decidedly toward keeping this material sealed.

This analysis does not apply to third party Blue Cross. They were a very active participant in the trial and much of the information they submitted was crucial to the Court's decision and to the public's understanding of the case. Thus, a higher percentage of their material is being disclosed.

In the charts below, the Court will analyze and rule upon each exhibit and page of testimony that the following parties request to remain sealed: (1) St Al's; (2) Treasure Valley Hospital; (3) St. Luke's; (4) Saltzer; (5) Blue Cross; (6) Micron; (7) Imagine Health; and (8) Primary Health.

**St Luke's**

| Trial Transcript Pages that St Luke's Wants | Court Analysis | Decision |
|---|---|---|

| Sealed | | |
|---|---|---|
| **Tr. 66-68 (Couch)** | Discussion of importance of Saltzer in St. Al's network and allegation that St. Luke's wants to remove its physicians from other networks. This is crucial to an understanding of the case and the Court's decision. No compelling reason exists to warrant sealing. | Denied |
| **Tr. 70-71** | Number of policies sold for Connected Care. No compelling reason to seal. | Denied |
| **Tr. 74-78** | Micron experience with St. Luke's. No compelling reason to seal. | Denied |
| **Tr. 77: 11-19** | Discussion of St. Luke's concern about price competition. No compelling reason to seal. | Denied |
| **Tr. 78-80** | Discussion of St. Luke's reluctance to get into bidding war with St. Al's. No compelling reason to seal. | Denied |
| **Tr. 83-84** | Discussion of physician referrals and purchases of physician practices. No compelling reason to seal. | Denied |
| **Tr. 88: 20-24 (ending at "under market")** | General discussion of physician salaries without revealing any individual salaries. No compelling reason to seal. | Denied |
| **Tr. 103-104** | Discussion of "monopoly model." No compelling reason to seal. | Denied |
| **Tr. 182:17-19** | General discussion of amount of contracts. No compelling reason to seal. | Denied |
| **Tr. 194-95** | Discussion of risk based contracting by St. Luke's. No compelling reason to seal. | Denied |
| **Tr. 198-99** | Discussion about Blue Cross approaching, and being rejected by St. Luke's for bundled payment. No compelling reason to seal. | Denied |
| **Tr. 200** | [same] | Denied |
| **Tr. 201** | Discussion about Blue Cross approaching, and being rejected by St. Luke's for Connected Care. No compelling reason to seal. | Denied |
| **Tr. 225-227** | Discussion of St. Luke's pricing as compared to Medicare. No compelling reason to seal. | Denied |
| **Tr. 251 to 253** | Discussion of the Twin falls experience, discussed above in this decision. As explained there, there is no compelling reason to seal this testimony. | Denied |
| **Tr. 256-58** | Discussion of hospital billing by St. Luke's, a practice that was important to the Court's decision and the public's understanding of this case. No | Denied |

| | compelling reason to seal. | |
|---|---|---|
| Tr. 261 | [same] | Denied |
| Tr. 263 | [same] | Denied |
| Tr. 264-65 | [same] | Denied |
| Tr. 271:3 thru 272:1 | Discussion of individual patient and costs of medical care for that patient. While no name is mentioned, the individual might be identified from the specifics of the care discussed. The testimony played no role in the Court's decision and is not helpful for the public to understand the case. It is sensitive individual medical information and hence compelling reasons exist to keep it sealed, and to redact this testimony. | Redact |
| Tr. 271-277 | Discussion of legal settlement of dispute between St. Luke's and Blue Cross, containing specific figures for the settlement amount. This implicates the interests of a non-party, played no role in the Court's decision and is sensitive legal information. There is therefore a compelling reason to keep it sealed and to redact this testimony. | Redact |
| Tr. 278:4-22 | Discussion of price rise when St. Luke's acquires physician practice. No compelling reason to seal. | Denied |
| Tr. 279-83 | Discussion of Twin Falls experience and Blue Cross opinion of St. Luke's pricing. No compelling reason to seal. | Denied |
| Tr. 289-95 | Discussion of St. Luke's pricing in comparison to Medicare and other hospitals. No compelling reason to seal. | Denied |
| Tr. 298-302 | Discussion of Blue Cross negotiations with St. Luke's over 2012-13 agreement. General in nature. No compelling reason to seal. | Denied |
| Tr. 306: 16-25 | Discussion of potential conflict of interest for named physician. It played no role in the Court's decision and could be detrimental to the reputation of a physician. It will not help the public to understand this case. Compelling reasons exist to redact. | Redact |
| Tr. 328: 13-19 | Discussion about how Blue Cross negotiations with St. Luke's would be affected by SelectHealth. No compelling reason to seal. | Denied |
| Tr. 336-41 | Discussion of Blue Cross negotiations with St. Luke's. No compelling reason to seal. | Denied |
| Tr. 346-49:3 | Discussion of 2009 negotiations between Blue Cross | Denied |

| | | |
|---|---|---|
| | and St. Luke's. Given its age – 5 years ago – the Court can find no compelling reason to keep this sealed. | |
| **Tr. 349: 4-23** | Discussion of 2013 negotiations between St. Luke's and Blue Cross on reimbursement rates. No compelling reason to seal. | Denied |
| **Tr. 353-59** | Discussion of St. Luke's Medicare losses. No compelling reason to seal. | Denied |
| **Tr. 364-67** | Discussion in general of provider-based billing. No compelling reason to seal. | Denied |
| **Tr. 372 thru 396** | Discussion of Twin Falls experience and provider-based billing. No compelling reason to seal. | Denied |
| **Tr. 398-406** | Discussion of Blue Cross negotiations with St. Luke's over reimbursement. This is important to the resolution of the case and the public's understanding. No compelling reason to seal. | Denied |
| **Tr. 412 to 415** | Discussion of the impact on pricing when St. Luke's acquires a physician practice. No compelling reason to seal. | Denied |
| **Tr. 421-28** | [same] | Denied |
| **Tr. 430-34** | [same] | Denied |
| **Tr. 469-71 (Duer)** | Discussion by Duer (Executive Director of IPN) regarding negotiations with St. Luke's. Shows St. Luke's bargaining power, an important part of this case. No compelling reason to seal. | Denied |
| **Tr. 471:19-24** | Discussion regarding St. Luke's pulling it physicians from other networks. This is important to the decision and public's understanding. No compelling reason to seal. | Denied |
| **Tr. 472-473 & 481-82** | Discussion about importance of St. Luke's and Saltzer in IPN network and their bargaining power. Important to an understanding of the case, and no compelling reason to seal. | Denied |
| **Tr. 492-93** | Discussion of St. Luke's charges in comparison to St. Al's. No compelling reason to seal. | Denied |
| **Tr. 495:3 to 496:2** | Discussion of physician salaries. This implicates the interests of non-parties, played no role in the Court's decision and is not necessary to an understanding of the case. It is sensitive personal information and thus a compelling reason exists to keep this sealed and redacted. | Redact |

| | | |
|---|---|---|
| **Tr. 499:23 to 500:16** | [same] | Redact |
| **Tr. 502:16 tto 503:5** | [same] | Redact |
| **Tr. 503:19-23** | [same] | Redact |
| **Tr. 504:4 to 505:8** | [same] | Redact |
| **Tr. 572 - 586** | Discussion by Otte regarding Micron's negotiations with St. Luke's concerning Micron employees' health plan and network. No compelling reason to seal. | Denied |
| **Tr. 587:14-18** | Discussion by Otte of Micron regarding the effect on Micron of St. Luke's acquiring physician practices. No compelling reason to seal. | Denied |
| **Tr. 610:20 to 613:25** | Discussion by Otte of Micron regarding St. Luke's discussing joining Micron's network. No compelling reason to seal. | Denied |
| **Tr. 616:10 to 617:6** | Discussion of physician compensation. There are compelling reasons to seal. | Redact |
| **Tr. 733:18 to 734:19** | Discussion of physician salaries. There are compelling reasons to seal. | Redact |
| **Tr. 740:18 to 23 741:7-13** | [same] | Redact |
| **Tr. 773:21 to 774:2** | [same] | Redact |
| **Tr. 1347:19-21** | Discussion by Dr. Dranove (expert) concerning hospital-based billing and noting that St. Luke's had computed a specific figure that it could obtain. This is important to the Court's decision and the public's understanding of the case. There is no compelling reason to seal. | Denied |
| **Tr. 1356:25 to 1357:5** | Discussion by Dr. Dranove (expert) concerning negotiations between St. Luke's and Micron and St. Luke's bargaining power. This is important to the Court's decision and the public's understanding. There are no compelling reasons to seal. | Denied |
| **Tr. 1372:18 to 1373:6** | Discussion of physician salaries. There are compelling reasons to seal. | Redact |
| **Tr. 1490:1-13** | Discussion of specific percentage needed by Regence Blue Shield to pay Saltzer to convince it to become part of the provider network. Demonstrates Saltzer's desirability and is important to Court's | Denied |

| | | |
|---|---|---|
| | decision and public understanding.  No compelling reason to seal. | |
| **Tr. 1490-25 to 1491:22** | [same] | Denied |
| **Tr. 1492:22 to 1493:8** | Discussion of St. Luke's strategy to pull its physicians from other networks.  Important to Court's decision and to public understanding of case, and no compelling reason to seal. | Denied |
| **Tr. 1520:1 to 1521:10** | [same] | Denied |
| **2975:5-10 2976:24 2977:6-7 2977:17 2978:3-4 2978:17-19 2978:23-24** | Discussion of negotiations between St. Luke's and Blue Cross over reimbursement with specific percentage figures discussed.  This is important to Court's decision and to the public's understanding of the case and there is no compelling reason to seal. | Denied |
| **2979:15-18** | Discussion of ability of St. Luke's to increase their reimbursement relative to other hospitals.  Important to the Court's decision and the public's understanding, and no compelling reason to seal. | Denied |
| **2980:11-16 2981:10-12 2981:16-18 2982:19-20** | [same] | Denied |

| Deponent | Redaction Requested (by St. Luke's) | Court Analysis | Decision |
|---|---|---|---|
| **Randy Billings (St. Luke's VP)** | 39-40 | Projected price increases in St. Luke's inpatient charges | Denied |
| **Billings** | 74-76 | Email discussing "monopoly model" | Denied |
| **Billings** | 79-82 | Percentage of ST. LUKE'S revenue that comes from Blue Cross and percentage of Blue Cross expenses that come from ST. LUKE'S. | |
| **Billings** | 88:21-25 | Blue Cross negotiations with ST. LUKE'S | Denied |
| **Billings** | 89-90 | [same] | Denied |

| | | | |
|---|---|---|---|
| **Billings** | 91-92 | [same] | Denied |
| **Billings** | 93-94 | Expectations of Blue Cross for ancillary services billing from Saltzer after deal is done & discussion of contract between Blue Cross & Saltzer. | Denied |
| **Billings** | 96-97 | Discussion of effect on SA of Saltzer leaving their ACN network. | Denied |
| **Billings** | 97-100 | Discussion about ST. LUKE'S leaving various networks | Denied |
| **Billings** | 105:9-14 | Specific numbers discussed re negotiations between ST. LUKE'S and Micron | Redacted |
| **Billings** | 111-112 | ST. LUKE'S internal discussion about getting into bidding war with St. Al's | Denied |
| **Billings** | 117-122 | ST. LUKE'S negotiations with Micron | Denied |
| **Billings** | 128-129 | Impact of Saltzer leaving ACN network | Denied |
| **Billings** | 133-135 | Discussion of why ST. LUKE'S does not want to get into bidding war with St. Al's | Denied |
| **Billings** | 138-140 | [same] | Denied |
| **Dao** | 72:2-24 76:4 to 77:11 | No compelling reason to seal | Denied |
| **Dr Djernes (physician with Saltzer)** | 44:13 to 45:6 | Discussion of personal compensation | Redacted |
| **Dr Djernes** | 47:2-4 | [same] | Redacted |
| **Dr Djernes** | 47:6-25 | [same] | Redacted |
| **Linda House (Systems director of employer relations at ST. LUKE'S)** | 27-30 | No compelling reason to seal. | Denied |
| **House** | 144:3-16 | Discussion of Imagine's business strategy. Imagine is not a party and this is sensitive business information that could harm the company if made public. There are compelling reasons to seal. | Redacted |
| **Huntington** | 84-89 | No compelling reason to seal | Denied |

| | | | |
|---|---|---|---|
| **Kaiser** | 98:18-24 | No compelling reason to seal | Denied |
| **Kee** | 78 & 88 | No compelling reason to seal | Denied |
| **Dr Randell Page (Partner at Saltzer)** | 51 to 52 | Discussion about Blue Cross no longer accepting consult codes 2011 (3 years ago now) | Denied |
| **Dr Page** | 57-59 | E-mail showing Dr Page's suggestion to get back money from Blue Cross's consult code denial by using "clout of entire network." Important to Court's decision and to public understanding, and no compelling reason to seal | Denied |
| **Dr Page** | 159-161 | [same] | Denied |
| **Max Reiboldt (consultant to Saltzer from Coker Group)** | 58-59<br>72-73<br>74-77<br>86-87<br>90-95<br>97-104<br>138-159<br>137:5-9 | No compelling reason to seal | Denied |
| **Reiboldt** | 137:5-9 | Discussion of specific compensation figures for Treasure Valley Hospital surgeons. There are compelling reasons to seal. | Redacted |
| **Chris Roth (ST. LUKE'S CEO)** | 101-104<br>111-113 | Discussion of St. Luke's business strategy for the future including market share projections. This was important to decision and public understanding, and no compelling reason to seal. | Denied |
| **Roth** | 159-160 | Discussion of Idaho's low rate of inpatient admissions per thousand population | Denied |
| **Roth** | 164-165 | [same] | Denied |
| **Roth** | 165-168 | [same] | Denied |
| **Savage** | 219<br>270-72 | No compelling reason to seal | Denied |
| **Seppi** | 210-227 | No compelling reason to seal. | Denied |
| **Dr James Souza** | 49:12-18 | Discussion of personal compensation of Dr. Souza | Redacted |
| **Joni Stright (Administrator for Treasure** | 121-125 | She discusses specific proposed acquisitions that ST. LUKE'S put on hold due to the FTC lawsuit. She | Denied |

| | | |
|---|---|---|
| **Valley region of the ST. LUKE'S clinics** | names the physician practices ST. LUKE'S was considering acquiring and then concludes that the deals have been put on hold (or are no longer being pursued) due to the FTC lawsuit. Important to decision and public understanding and no compelling reason to seal. | |

| **Exhibit Requested by St. Luke's to be Sealed** | **Court Analysis** | **Decision** |
|---|---|---|
| **3** | Lists potential physician group affiliations with St. Luke's not all of which took place. It names individual physicians and practices and reveals potential affiliation that might be damaging to them. Not important to Court decision or to public understanding. Compelling reasons exist to seal. | Seal |
| **6** | Discusses individual physician compensation. Contains personal sensitive information. Compelling reasons exist to seal. | Seal |
| **10** | Contains detailed financial data for St. Luke's used in 2013 negotiations with Blue Cross. Would be damaging to competitors if revealed. Not important to Court decision or public understanding. Compelling reasons exist to seal. | Seal |
| **11** | No compelling reason to seal. | Deny |
| **12** | No compelling reason to seal. | Deny |
| **13** | Discusses individual physician compensation. Contains personal sensitive information. Compelling reasons exist to seal. | Seal |
| **14** | [same] | Seal |
| **15** | Terms of Saltzer deal. Important to Court decision and public understanding. No compelling reason to seal. | Deny |
| **16** | Discusses financial information regarding individual practice categories in Saltzer and could be tied to individual physicians through inference. Thus, it contains sensitive personal information and is not important to Court decision or public understanding. Compelling reasons exist to seal. | Seal |
| **17** | Letter of intent on Saltzer deal. No compelling reasons | Deny |

| | | |
|---|---|---|
| | for sealing. | |
| 24 | Professional Services Agreement (PSA) with Saltzer physicians. This was discussed in Court's Findings and Conclusions. No compelling reason to seal. | Deny |
| 26 | Amendment to above [same analysis] | Deny |
| 27 | [same] | Deny |
| 28 | [same] | Deny |
| 30 | [same] | Deny |
| 31 | Discusses individual physician compensation in the purchase agreement by St. Luke's of a physician practice. Contains sensitive personal information and compelling reasons exist to seal. | Seal |
| 34 | Discusses individual physician compensation in the purchase agreement by St. Luke's of a physician practice. Contains sensitive personal information and compelling reasons exist to seal. | Seal |
| 35 | [same] | Seal |
| 37 | [same] | Seal |
| 38 | Asset Acquisition Agreement between Saltzer and St. Luke's. No compelling reason to seal. | Deny |
| 39 | Discusses individual physician compensation in the purchase agreement by St. Luke's of a physician practice. Contains sensitive personal information and compelling reasons exist to seal. | Seal |
| 41 | Strategic Affiliation Agreement between St. Luke's and SelectHealth. Played no role in Court decision and not important to public understanding. Contains sensitive business information that would be damaging if revealed. Compelling reasons exist to seal. | Seal |
| 42 | Summary of terms of Saltzer/St. Luke's deal. No compelling reason to seal. | Deny |
| 43 | Email string regarding Blue Cross reimbursement rates. No compelling reason to seal. | Deny |
| 46 | [same] | Deny |
| 47 | Email between St. Luke's and Micron CEO re political discussions with Governor staff. No compelling reason to seal. | Deny |
| 48 | PSA [see analysis above] | Deny |
| 49 | Discusses individual physician compensation in the purchase agreement by St. Luke's of a physician practice. Contains sensitive personal information and compelling reasons exist to seal. | Seal |
| 50 | Space and Equipment Lease. No compelling reason to | Deny |

| | | |
|---|---|---|
| | seal. | |
| **51** | Discusses individual physician compensation in the purchase agreement by St. Luke's of a physician practice. Contains sensitive personal information and compelling reasons exist to seal. | Seal |
| **52** | Discusses individual physician agreement with St. Luke's. Contains sensitive personal information and compelling reasons exist to seal. | Seal |
| **54** | LaFleur Deposition. No compelling reason to seal. | Deny |
| **1008** | Email re affiliation with physician practice. No compelling reason to seal. | Deny |
| **1012** | Detailed financial information on Imagine network negotiations with St. Luke's. Compelling reasons exist to seal as this data implicates the interests of non-parties, would be damaging if revealed and played no part in Court decision or public understanding. | Seal |
| **1036** | This email is full of individual's names and analysis of personalities. It would be damaging to individuals if released. It played no role whatsoever in the Court's decision and cannot help the public's understanding. Compelling reasons exist to seal | Seal |
| **1044** | Not admitted | Not admitted |
| **1048** | Detailed study by St. Luke's discussing strategy for compensating physicians. It played no role whatsoever in Court's decision and contains highly sensitive business information that would be damaging if revealed. Compelling reasons exist to seal. | Seal |
| **1050** | [same] | Seal |
| **1051** | Outline of history of relationship between Saltzer and St. Luke's from 2006 to present. No compelling reason to seal. | Deny |
| **1052** **1053** **1054** | Not admitted | Not admitted |
| **1055** | St. Luke's strategy on reimbursement. No compelling reason to seal. | Deny |
| **1056** | Not admitted | Not admitted |
| **1057** | St. Luke's plans to expand into other areas in Idaho. This is sensitive business strategy information that would be damaging if revealed. It played no role in Court decision or public understanding. Compelling reasons exist to seal. | Seal |
| **1058** | 2013 Operating Budget for St. Luke's containing | Seal |

| | | |
|---|---|---|
| | detailed financial data. It played no role in Court's decision or public understanding. Compelling reasons exist to seal. | |
| 1059 | 2012 Joint Audit and Finance Planning and Strategy Meeting notes. [same analysis as above] | Seal |
| 1060 | [same] | Seal |
| 1061 | Letter re dispute between Blue Cross and St. Luke's. No compelling reason to seal. | Deny |
| 1062 | Meeting notes discussing strategies for St. Luke's in negotiating with payers. No compelling reason for sealing. | Deny |
| 1063 | [same] | Seal |
| 1064 | Detailed financial statements for St. Luke's clinics. This played no role in Court's decision or in public understanding. This information is sensitive financial information that could be damaging if revealed. Compelling reasons exist for sealing. | Seal |
| 1066 | Detailed budget for St. Luke's [same analysis as above] | Seal |
| 1067 | St Luke's strategy with payers 2011. No compelling reason to seal. | Deny |
| 1073 | Email string regarding competing with St. Al's. This touches on issues in case and there are no compelling reasons to seal. | Deny |
| 1075 | Reveals details of third-party Primary Health and its negotiations with St. Luke's. This could be damaging to Primary Health, not a party to this case. Compelling reasons exist to seal. | Seal |
| 1076 | [same] | Seal |
| 1079 | Nampa Demand Assessment. Touches on issues in case. No compelling reason to seal. | Deny |
| 1080 | St Luke's financial statements for 2011. This sensitive financial information would be damaging if revealed. It played no role in Court's decision or public understanding. Compelling reasons exist to seal. | Seal |
| 1081 | Discussion of Nampa market. Concerns issues in trial. No compelling reason to seal. | Deny |
| 1083 | [same] | Deny |
| 1085 | Email string with detailed financial data for St Luke's. This sensitive financial information would be damaging if revealed. It played no role in Court's decision or public understanding. Compelling reasons exist to seal. | Seal |
| 1086 | Detailed financial data for St Luke's. This sensitive financial information would be damaging if revealed. | Seal |

| | | |
|---|---|---|
| | It played no role in Court's decision or public understanding. Compelling reasons exist to seal. | |
| 1089 | Discussion of Primary Health [see analysis above warranting sealing] | Seal |
| 1092 | Financial details of integration of St. Luke's and a specific physician practice. Played no role in Court decision or public understanding. Details would be damaging if revealed. Compelling reasons to seal. | Seal |
| 1093 | Case flow discussion and strategy by St. Luke's. Sensitive financial data that could be damaging if revealed. Played no role in Court decision or public understanding. Compelling reasons exist to seal. | Seal |
| 1097 | Strategy for achieving Triple Aim. No compelling reason to seal. | Deny |
| 1100 | Email discussion internally in St. Luke's of integrated care, a central issue in this case. No compelling reason to seal. | Deny |
| 1101 | No compelling reason to seal | Deny |
| 1102 | [same] | Deny |
| 1103 | [same] | Deny |
| 1104 | [same] | Deny |
| 1105 | [same] | Deny |
| 1114 | St. Luke's study on region-wide physician needs assessment. Discusses how changes in demographics will drive demand for physicians. Sensitive information that would be damaging if revealed, and would assist competitors with valuable information that St. Luke's purchased. Compelling reasons exist to seal. | Seal |
| 1115 | 2011 Saltzer transaction update. No compelling reason to seal. | Deny |
| 1118 | St. Luke's internal discussion for improving cash flow by, in part, looking to ancillary services in Nampa. Concerns issues in the case. No compelling reason to seal. | Deny |
| 1125 | Discloses financial data on planned surgical center. Played no role in Court decision or in public understanding. Sensitive financial data that would be damaging if revealed. Compelling reasons exist to seal. | Seal |
| 1126 | [same] | Seal |
| 1127 | Discusses Nampa expansion. None of the detailed financial data that was in previous exhibits. No compelling reason exists to seal. | Deny |
| 1134 | No compelling reason to seal. | Deny |

| 1135 | No compelling reason to seal | Deny |
|------|------------------------------|------|
| 1137 | No compelling reason to seal | Deny |
| 1138 | Detailed financial data on physician practices considering integrating with St. Luke's.  This would be damaging if disclosed and played no role in Court decision or public understanding.  Compelling reasons exist to seal. | Seal |
| 1139 | [same – dealing with detailed financials for St. Luke's] | Seal |
| 1165 | No compelling reason to seal | Deny |
| 1168 | [same] | Deny |
| 1170 | Letter of Intent between St. Luke's and Micron.  No compelling reason to seal. | Deny |
| 1171 | No compelling reason to seal. | Deny |
| 1174 | [same] | Deny |
| 1181 | Payer strategies by St. Luke's | Deny |
| 1185 | No compelling reason to seal. | Deny |
| 1186 | [same] | Deny |
| 1187 | Detailed contract negotiation results with payers prepared by St. Luke's in 2009.  Given its age, no compelling reason to seal. | Deny |
| 1188 | No compelling reason to seal. | Deny |
| 1189 | [same] | Deny |
| 1192 | [same] | Deny |
| 1193 | [same] | Deny |
| 1194 | [same] | Deny |
| 1201 | [same] | Deny |
| 1202 | [same] | Deny |
| 1203 | [same] | Deny |
| 1204 | [same] | Deny |
| 1207 | [same] | Deny |
| 1208 | Detailed payer reimbursement by St. Luke's.  Compelling reasons to seal. | Seal |
| 1213 | Discussion of clinical integration, key issue in this case.  No compelling reason to seal. | Deny |
| 1214 | [same] | Deny |
| 1216 | St. Luke's payer strategy.  No compelling reason to seal. | Deny |
| 1217 | Not admitted | Not admitted |
| 1218 | St Luke's payer strategy.  No compelling reason to seal. | Deny |
| 1219 | Short strategy outline.  No compelling reason to seal. | Deny |
| 1221 | St Luke's payer data.  No compelling reason to seal. | Deny |
| 1225 | No compelling reason to seal. | Deny |
| 1226 | [same] | Deny |

| | | |
|---|---|---|
| **1227** | [same] | Deny |
| **1228** | [same] | Deny |
| **1229** | [same] | Deny |
| **1230** | [same] | Deny |
| **1231** | [same] | Deny |
| **1234** | [same] | Deny |
| **1237** | St. Luke's budget for 2012. Contains detailed financial data that played no role in Court's decision, will not assist the public in understanding the case and would be damaging if disclosed. Compelling reasons exist to seal. | Seal |
| **1238** | Not admitted | Not admitted |
| **1239** | Not admitted | Not admitted |
| **1240** | Study for St. Luke's of compensation of two named physicians. Sensitive personal information and compelling reasons exist to seal. | Seal |
| **1241** | Not admitted | Not admitted |
| **1242** | Not admitted | Not admitted |
| **1243** | Not admitted | Not admitted |
| **1244** | Not admitted | Not admitted |
| **1245** | Detailed financial data on St. Luke's integration with physician clinics. The detailed data itself is not important to the Court's decision and would be damaging if released. Compelling reasons exist to seal. | Seal |
| **1249** | Study by consultant for St. Luke's on physician compensation. Same analysis as for Exh 1048 (see above) | Seal |
| **1250** | Not admitted | Not admitted |
| **1251** | Not admitted | Not admitted |
| **1252** | Not admitted | Not admitted |
| **1253** | Not admitted | Not admitted |
| **1254** | Not admitted | Not admitted |
| **1260** | Not admitted | Not admitted |
| **1261** | Consultant valuation of Saltzer – detailed report. It played no role in Court decision and is not important to public understanding. It contains sensitive business valuation data on Saltzer that would be damaging if revealed, and is proprietary information. | Seal |
| **1262** | Saltzer transaction update. No compelling reason to seal | Deny |
| **1264** | Strategy for OB/GYN practice group that discusses individual physicians. Contains sensitive personal and professional information and was not considered by | Seal |

| | | |
|---|---|---|
| | Court or important to public understanding. Compelling reasons exist to seal. | |
| 1265 | No compelling reason to seal. | Deny |
| 1269 | Study for St. Luke's of compensation for orthopedic surgeons. Sensitive personal and professional information and there are compelling reasons to seal. | Seal |
| 1273 | Not admitted | Not admitted |
| 1274 | Report on 2010 integration with physician practice. Sensitive professional information that would be damaging if revealed. Compelling reasons exist to seal. | Seal |
| 1275 | 2009 strategic planning report on West Treasure Valley. No compelling reason to seal. | Deny |
| 1277 | Saltzer integration report showing higher hospital billing rates. It concerns issues in this case and assists public understanding of the case and Court decision. No compelling reason to seal | Deny |
| 1280 | Email discussion of individual physicians and their stance on Saltzer deal. Irrelevant to Court decision and will not assist public in understanding the case. Contains potentially embarrassing personal information. Compelling reasons exist to seal. | Seal |
| 1281 | List showing dominance of Saltzer in Nampa area. Concerns issues in case and assists public in understanding Court decision. | Deny |
| 1283 | Discussion of named physicians and the revenue they generate. Contains personal and professional sensitive data that would be damaging if disclosed. Compelling reasons exist to seal. | Seal |
| 1293 | Outline of details of St. Luke's integration with one clinic. Sensitive business information that would be damaging if revealed. Played no role in Court decision or public understanding. Compelling reasons exist to seal | Seal |
| 1302 | Estimate changes for pricing of ancillary services if Saltzer deal goes through. Concerns issues in the case. Important to public understanding. | Deny |
| 1310 | St Luke's submission to Idaho Attorney General . No compelling reason to seal | Deny |
| 1315 | Not admitted | Not admitted |
| 1323 | No compelling reason to seal | Deny |
| 1324 | Not admitted | Not admitted |
| 1329 | Not admitted | Not admitted |
| 1331 | Not admitted | Not admitted |

| 1334 | Not admitted | Not admitted |
|------|--------------|--------------|
| 1339 | Operating Agreement of Alliance Medical Group LLC. (group that operates Primary Health). Not a party to this case and contains sensitive financial data that would be damaging if released. Compelling reasons exist to seal. | Seal |
| 1340 | More on Primary Health. Same analysis as above. | Seal |
| 1343 | Agreement by named physician with St. Luke's. Contains sensitive professional and personal information and played no role in Court decision and public understanding. Compelling reasons exist to seal. | Seal |
| 1346 | [same] | Seal |
| 1347 | Executive summary of integration between St. Luke's and clinic containing sensitive financial data which have nothing to do with Court decision or public understanding. Compelling reasons exist to seal. | Seal |
| 1349 | [same as 1343] | Seal |
| 1350 | Not admitted | Not admitted |
| 1353 | Chart comparison of St. Al's with St. Luke's. No compelling reason to seal | Deny |
| 1359 | Discussion of individual named physicians in email. Played no role in Court decision or public understanding. Compelling reasons exist to seal | Seal |
| 1378 | PSA between St. Luke's and Saltzer. See above | Deny |
| 1398 | No compelling reason to seal. | Deny |
| 1414 | Not admitted | Not admitted |
| 1418 | [same as 1343] | Seal |
| 1422 | Minutes – no compelling reason for sealing | Deny |
| 1426 | Real Estate Purchase Agreement – Contains sensitive financial data about nonparty and thus compelling reasons exist to seal. Played no role in Court decision or public understanding. | Seal |
| 1427 | [same] | Seal |
| 1428 | [same as 1343] | Seal |
| 1429 | [same] | Seal |
| 1433 | [same as 1343] | Seal |
| 1434 | [same as 1343] | Seal |
| 1435 | Memo of St Luke's. No compelling reason to seal | Deny |
| 1437 | Memo naming individual physicians. No part in Court decision or public understanding. Compelling reasons exist to seal | Seal |
| 1439 | [same as 1343] | Seal |
| 1440 | [same as 1343] | Seal |

| | | |
|---|---|---|
| **1443** | St Luke's strategy re employment. No compelling reason to seal | Deny |
| **1451** | Sensitive business planning document. Compelling reasons to seal | Seal |
| **1452** | St Luke's and Saltzer integration plan. No reason to seal | Deny |
| **1453** | [same] | Deny |
| **1455** | Not admitted | Not admitted |
| **1457** | Handwritten notes – no reason to seal | Deny |
| **1458** | Not admitted | Not admitted |
| **1459** | [same as 1451] | Seal |
| **1460** | [same] | Seal |
| **1463** | Not admitted | Not admitted |
| **1466** | [same as 1451] | Seal |
| **1469** | [same] | Seal |
| **1472** | Saltzer transaction update. No reason to seal | Deny |
| **1473** | Saltzer deal financial details. No relevance to case and contains sensitive financial information that would be damaging if revealed. Compelling reasons exist to seal. | Seal |
| **1475** | [same] | Seal |
| **1476** | [same] | Seal |
| **1477** | [same] | Seal |
| **1479** | Discussion re physician compensation | Seal |
| **1480** | [same] | Seal |
| **1482** | No reason to seal | Deny |
| **1488** | Demographic data for Nampa. No reason to seal | Deny |
| **1490** | Not admitted | Not admitted |
| **1493** | Not admitted | Not admitted |
| **1497** | Not admitted | Not admitted |
| **1498** | Not admitted | Not admitted |
| **1499** | Not admitted | Not admitted |
| **1500** | Not admitted | Not admitted |
| **1501** | Not admitted | Not admitted |
| **1505** | Listing of payer adjustments for St Luke's. No reason to seal | Deny |
| **1510** | Strategy session re Select Network. Nothing to do with Court decision or public understanding. Would be damaging if revealed because it contains strategy regarding sensitive business information. Compelling reasons exist to seal | Seal |
| **1514** | Not admitted | Not admitted |
| **1528** | Strategy between St. Luke's and Micron. Involves interests of non-party and contains sensitive | Seal |

| | | |
|---|---|---|
| | information that would be damaging if released. | |
| **1532** | Not admitted | Not admitted |
| **1565** | Sensitive financial data of St Luke's and Saltzer. Played no role in Court decision or public understanding. | Seal |
| **1567** | Not admitted | Not admitted |
| **1569** | Compensation of physicians | Seal |
| **1570** | No compelling reason to seal | Deny |
| **1572** | Not admitted | Not admitted |
| **1573** | No compelling reason to seal | Deny |
| **1576** | Not admitted | Not admitted |
| **1582** | Primary Health strategy. Involves interests of non-party and contains sensitive information that would be damaging if released. | Seal |
| **1583** | Micron data. Same analysis | Seal |
| **1584** | [same] | Seal |
| **1585** | [same] | Seal |
| **1586** | No compelling reason to seal | Deny |
| **1587** | Dealings with Select Health. Involves interests of non-party and contains sensitive information that would be damaging if released. | Seal |
| **1590** | No reason to seal | Deny |
| **1591** | Not admitted | Not admitted |
| **1592** | St Luke's strategy re physician recruitment. No reason to seal. Concerns issues in case | Deny |
| **1594** | [same as 1343] | Seal |
| **1595** | Not admitted | Not admitted |
| **1596** | Not admitted | Not admitted |
| **1597** | Not admitted | Not admitted |
| **1600** | Not admitted | Not admitted |
| **1601** | Not admitted | Not admitted |
| **1602** | St Luke's strategy re clinical integration. No reason to seal. Concerns issues in case. | Deny |
| **1603** | Not admitted | Not admitted |
| **1604** | No reason to seal | Deny |
| **1605** | Not admitted | Not admitted |
| **1608** | Not admitted | Not admitted |
| **1612** | Not admitted | Not admitted |
| **1613** | Not admitted | Not admitted |
| **1615** | Strategy of St Luke's re employment. No reason to seal | Deny |
| **1617** | [same] | Deny |
| **1618** | [same] | |

| | | |
|---|---|---|
| **1619** | Not admitted | Not admitted |
| **1620** | Not admitted | Not admitted |
| **1621** | St Luke's integration strategy.  No reason to seal | Deny |
| **1622** | No reason to seal | Deny |
| **1623** | Not admitted | Not admitted |
| **1624** | Not admitted | Not admitted |
| **1626** | Not admitted | Not admitted |
| **1628** | Not admitted | Not admitted |
| **1629** | Not admitted | Not admitted |
| **1630** | Not admitted | Not admitted |
| **1631** | Not admitted | Not admitted |
| **1632** | Not admitted | Not admitted |
| **1633** | No reason to seal | Deny |
| **1634** | Not admitted | Not admitted |
| **1635** | Contains portions of physician contracts. Sensitive professional and personal data – compelling reasons exist to seal. | Seal |
| **1636** | [same] | Seal |
| **1637** | [same] | Seal |
| **1655** | Names individual physicians and discusses case counts. Compelling reasons to seal | Seal |
| **1659** | No reason to seal | Deny |
| **1660** | [same] | Deny |
| **1664** | No reason to seal | Deny |
| **1698** | Not admitted | Not admitted |
| **1771** | Not admitted | Not admitted |
| **1804** | Nampa market shares.  Concerns issues in case and important to public understanding | Deny |
| **1805** | [same] | Deny |
| **1806** | [same] | Deny |
| **1807** | [same] | Deny |
| **1808** | [same] | Deny |
| **1809** | [same] | Deny |
| **1810** | [same] | Deny |
| **1811** | [same] | Deny |
| **1835** | Not admitted | Not admitted |
| **1840** | No reason to seal | Deny |
| **1841** | Not admitted | Not admitted |
| **1846** | Not admitted | Not admitted |
| **1878** | Not admitted | Not admitted |
| **1936** | Not admitted | Not admitted |
| **1944** | Not admitted | Not admitted |
| **1955** | No reason to seal | Deny |

| 1956 | No reason to seal | Deny |
|------|------------------|------|
| 1957 | Compelling reasons to seal | Seal |
| 1971 | Not admitted | Not admitted |
| 1972 | Physician compensation. | Seal |
| 1973 | No reason to seal | Deny |
| 1974 | No reason to seal | Deny |
| 1977 | Physician compensation | Seal |
| 1978 | Not admitted | Not admitted |
| 1982 | Not admitted | Not admitted |
| 1984 | Not admitted | Not admitted |
| 1988 | Not admitted | Not admitted |
| 1989 | Not admitted | Not admitted |
| 1992 | Not admitted | Not admitted |
| 1993 | Not admitted | Not admitted |
| 2006 | Not admitted | Not admitted |
| 2032 | No reason to seal | Deny |
| 2033 | Not admitted | Not admitted |
| 2034 | Not admitted | Not admitted |
| 2035 | Not admitted | Not admitted |
| 2045 | Not admitted | Not admitted |
| 2201 | No reason to seal | Deny |
| 2215 | Not admitted | Not admitted |
| 2216 | No reason to seal | Deny |
| 2247 | No reason to seal | Deny |
| 2248 | [same] | Deny |
| 2249 | No reason to seal | Deny |
| 2250 | [same] | Deny |
| 2251 | [same] | Deny |
| 2252 | [same] | Deny |
| 2253 | [same] | Deny |
| 2256 | Physician compensation | Seal |
| 2258 | Sensitive financial data and physician compensation | Seal |
| 2261 | Micron sensitive information.  Involves interests of non-party and contains sensitive information that would be damaging if released. | Seal |
| 2270 | Boise School District information.  Involves interests of non-party and contains sensitive information that would be damaging if released. | Seal |
| 2395 | Compelling reasons to seal | Seal |
| 2520 | [same as 1343] | Seal |
| 2521 | No reason to seal | Deny |
| 2522 | Physician compensation | Seal |
| 2546 | Not admitted | Not admitted |

| | | |
|---|---|---|
| **2554** | Boise School District sensitive information | Seal |
| **2562** | [same as 1343] | Seal |
| **2570** | Compelling reasons to seal | Seal |
| **2573** | No reason to seal | Deny |
| **2574** | [same] | Deny |
| **2575** | Physician compensation | Seal |
| **2580** | Not admitted | Not admitted |
| **2581** | Physician compensation | Seal |
| **2590** | No reason to seal | Deny |
| **2592** | [same] | Deny |
| **2594** | Not admitted | Not admitted |
| **2595** | Not admitted | Not admitted |
| **2596** | Not admitted | Not admitted |
| **2599** | Not admitted | Not admitted |
| **2601** | Not admitted | Not admitted |
| **2612** | Not admitted | Not admitted |
| **2616** | No reason to seal | Deny |
| **2624** | Compensation information | Seal |
| **2625** | Letter to Attorney General | Deny |
| **2626** | Not admitted | Not admitted |
| **2627** | Not admitted | Not admitted |
| **2629** | Not admitted | Not admitted |
| **2630** | Not admitted | Not admitted |
| **2633** | Not admitted | Not admitted |
| **2634** | No reason to seal | Deny |
| **2635** | Not admitted | Not admitted |
| **Demonstrative Exhibits** | These were viewed by the Court and important to understanding of the public. While they may contain some sensitive information, on balance they are crucial to the public's understanding. Accordingly, the Court will deny St. Luke's request to keep sealed the Demonstrative Exhibits as the Court cannot find compelling reasons to seal them. | Deny |

**St. Al's**

| St Al's Requests for Redaction or Sealing of Trial | Court Analysis | Decision |
|---|---|---|

| Testimony | | |
|---|---|---|
| Tr. 765:12-22 | Discussion of physician compensation | Redacted |
| Tr. 767:24 to 768:22 | [same] | Redacted |
| Tr. 779:21 to 780:13 | Discussion of volume of surgeries available for Saltzer surgeons. Important to decision and public understanding, and no compelling reason to seal. | Denied |
| Tr. 781:9 to 12 | [same] | Denied |
| Tr. 785 823-826 | No compelling reason to seal. | Denied |
| Tr. 878-882 | No compelling reason to seal. | Denied |
| Tr. 883:17-24 | Discussion of Saltzer pediatricians that played no role in the Court's decision and will not help the public understand the case and contains sensitive information. There are compelling reasons to seal | Redacted |
| Tr. 884-898 | No compelling reasons to seal. | Denied |
| Tr. 902:12-17 | Discussion of provisions in physician contracts with St. Al's. It contains sensitive personal information and is not important to Court decision or public understanding. There are compelling reasons to seal. | Redacted |
| Tr. 903: 5-6 | [same] . | Redacted |
| Tr. 906 to 949 | No compelling reason to seal. | Denied |
| Tr. 950:14 to 953:19 | Discussion of St. Al's estimate of financial losses and job losses if Saltzer is acquired by St. Luke's. Important to the Court's decision and public understanding, and no compelling reason to seal. | Denied |
| Tr. 954 to 966 | [same] | Denied |
| Tr. 967 to 974 | Discussion of St. Al's estimate concerning the number of referrals it would lose if Saltzer deal went through. Important to decision and public understanding, and no compelling reason to seal. | Denied |
| Tr. 979:18 to 980:4 | Discussion of St. Al's operating margin and how the failure to meet that figure did not result in job cuts in the past. Important to decision and public understanding, and no compelling reason to seal. | Denied |
| Tr. 980:8 to 981:5 | Discussion of St. Al's owner – Trinity – and specific sums spent on Nampa Health Plaza. No compelling reason to seal. | Denied |

| | | |
|---|---|---|
| **Tr. 983 to 985** | No compelling reason to seal | Denied |
| **Tr. 1238 to 1248** | No compelling reason to seal. | Denied |
| **Tr. 1249:6-16** | Discussion of specific manner of payment of compensation to physicians. Not important to decision or public understanding and contains sensitive personal information. There are compelling reasons to seal. | Redacted |
| **Tr. 1250-55** | No compelling reason to seal. | Denied |
| **Tr. 1256:16-25** | Discussion of importance of Micron to St. Al's. Important to public understanding of case and no compelling reason to seal. | Denied |
| **Tr. 1257:9-17** | Discussion from St. Al's that the loss of Saltzer physicians in its network would be very damaging. This is important to the Court's decision and the public's understanding, and there is no compelling reason to seal. | Denied |
| **Tr. 1258 to 1268** | No compelling reason to seal. | Denied |
| **Tr. 1361 – 1362** | Discussion from St. Al's about how patients prefer their established relationships with doctors. No compelling reason to seal. | Denied |
| **Tr. 2896:12 to 2897:7** | Discussion of St. Al's strategic business plan, including aligning with independent physicians. While this discusses sensitive business information, it is crucial to the public's understanding of the case and there is no compelling reason to seal. | Denied |
| **Tr. 2897:12-23** | [same] | Denied |
| **2988:7-18** | Discussion of the capacity of certain physicians. This contains sensitive personal criticism that played no role in the Court's decision and is not needed for the public to understand this case. There are compelling reasons to seal. | Redacted |
| **Tr. 2989:5-19** | [same] | Redacted |
| **Tr. 3152:8 to 3153:21** | Discussion of estimated financial and job losses to St. Al's if Saltzer deal goes through. Important to Court decision and public understanding, and no compelling reason to seal. | Denied |
| **Tr. 3153 to 3155** | [same] | Denied |
| **Tr, 3156 to 3161** | No compelling reason to seal | Denied |
| **Tr. 3162:5-18** | Discussion of St. Al's operating margin it needs to remain profitable. This was important to St. Al's allegation of damage from the Saltzer deal and | Denied |

| Deponent | Redaction | Decision |
|---|---|---|
| | hence important to the public's understanding of this case. No compelling reason to seal. | |
| Tr. 3164 to 3166 | [same] | Denied |
| Tr. 3169-3172 | Discussion of St. Al's admission data and how for each patient the hospital determines who is that patient's primary care physician. No compelling need to seal. | Denied |
| Tr. 3175:5 to 3177:4 | Discussion of loss of market share in 2010 and 2011 for St. Al's and the reasons for it. No compelling reason to seal. | Denied |
| Tr. 3186: 4-15 | Discussion of estimated financial loss to St. Al's if Saltzer deal goes through. Important to Court decision and public understanding, and no compelling reason to seal. | Denied |
| Tr. 3190:1-8 | Discussion of specific physician. Not important to Court decision or public understanding and contains sensitive personal information. There is compelling reason to seal. | Redacted |
| Tr. 3196:2 to 3197:16 | Discussion of three named physicians and their work volume and productivity. Contains sensitive personal information and not important to Court's decision or to public's understanding. There are compelling reasons to seal. | Redacted |
| Tr. 3198:2 to 3200:19 | Discussion of one named physician and projections of his referrals. Contains sensitive personal information and not important to Court's decision or to public's understanding. There are compelling reasons to seal. | Redacted |
| Tr.3204:9 | Names individual physician. Compelling reasons to seal. | Redacted |
| Tr. 3211:10-13 | [same] | Redacted |
| Tr. 3212:10-17 | [same] | Redacted |
| Tr. 3214 to 3215 | No compelling reason to seal | Denied |
| Tr. 3274 to 3275 | No compelling reason to seal | Denied |
| Tr. 3306 | Discussion of Saltzer referrals estimated after Saltzer deal went through. No compelling reason to seal. | Denied |

| Deponent | Redaction | Court Analysis | Decision |
|---|---|---|---|

|  | Requested (by St. Al's) |  |  |
|---|---|---|---|
| Steve Brown (Chief Medical Officer St. Al's) | 52:13-22 | Decision by St. Al's not to become Medicare Accountable Care Organization. No compelling reason to seal. | Denied |
| Brown | 53:5-20 | [same] | Denied |
| Brown | 129 – 131 | Discussion of whether St. Al's has fully integrated system. This is important to public understanding and no compelling reason to seal | Denied |
| Brown | 137:20 to 140:15 | Discussion of St.Al's incentive bonus compensation plan. This contains sensitive personal compensation information and played no role in Court decision and is not necessary for public understanding. Compelling reasons exist for sealing. | Redacted |
| Brown | 145 – 149 | Discussion of St Al's goals for its clinically integrated system. No compelling reason to seal. | Denied |
| Brown | 150 – 154 | St Al's negotiations with Saltzer. No compelling reason to seal. | Denied |
| Brown | 160:14 to 161:11 | Discussion about non-compete and compensation in proposal from St. Al's to Saltzer. This contains sensitive personal information and was not important to Court's decision or to public's understanding. Compelling reasons exist to seal. | Redacted |
| Brown | 161:14 to 162:7 | [same] | Redacted |
| Brown | 191:14-16 | Specific number of persons covered in contracts with SA's Alliance network. Not important to Court decision or public understanding. Compelling reasons exist to seal. | Redacted |
| Brown | 192 to 200 | No compelling reason to seal. | Denied |
| Brown | 204-207 | Discussion of details of St.Al's strategy regarding its Alliance network. This is important to issue regarding integrated systems and thus there is no compelling reason to seal. | Denied |

| | | | |
|---|---|---|---|
| **Brown** | 212 to 214 | No compelling reason to seal | Denied |
| **Brown** | 222-223 | Discussion of St Al's Alliance network's planning for entering into risk based contracts in the future. This was important issue in the case. It may contain some sensitive planning information but its importance to the public understanding outweighs sensitive nature – no compelling reason to seal. | Denied |
| **Brown** | 225-232 | No compelling reason to seal | Denied |
| **Sally Jeffcoat (St. Al's CEO)** | 68 to 77<br>90 to 91<br>120 to 121<br>165 to 167<br>173-199 | No compelling reason to seal | Denied |
| **Sally Jeffcoat** | 169:14-17 | Identifying specific sum for compensation to Saltzer physicians. Contains sensitive personal information that was not important to Court's decision or public's understanding. Compelling reasons exist to seal. | Redacted |
| **Blaine Petersen (St. Al's financial officer** | 78 to 80<br>167 to 169 | No compelling reason to seal | Denied |
| **Petersen** | 225:10-18 | Discussion of named physician. Not important to decision or public understanding. Compelling reason to seal exists. | Redacted |
| **Powell** | 361: 2-15 | No compelling reason to seal | Denied |
| **Thomas Reinhardt (St. Al's assistant VP)** | 75-78 | General discussion about criteria for inclusion of physicians in SA's Alliance Network. No compelling reason to seal | Denied |
| **Reinhardt** | 78 to 82<br>107 to 108<br>134 | No compelling reason to seal | Denied |
| **Reinhardt** | 124:8 to 128:6 | Discussion of terms of contract between St. Al's and named physician | Redacted |
| **Dr Michael Roach (St. Al's** | 126-128<br>138-139 | Explains why volume of work done by specialist might be harder to | Denied |

| | | | |
|---|---|---|---|
| physician) | | recoup than volume of work done by primary care physician. No compelling reason to seal | |
| Dr Roach | 181-182 | Explains St Al's general goal of keeping referrals within St. Al's. No compelling reason to seal. | Denied |
| Gregory Sonnenberg (Director of Managed Care for St. Al's) | 51 to 239 | No compelling reason to seal. | Denied |

| Exhibits St. Al's Seeks to Seal | Court Analysis | Ruling |
|---|---|---|
| 1682 | Reimbursement comparison between St Luke's, TVH and St. Al's. No compelling reason to seal. | Deny |
| 1693 | Market share analysis by expert. No compelling reason to seal. | Deny |
| 1694 | [same] | Deny |
| 1695 | [same] | Deny |
| 1696 | [same] | Deny |
| 1697 | [same] | Deny |
| 1702 | Saltzer patient share of general acute care inpatient hospital services at TVH, St. Al's and St. Luke's. No compelling reason to seal. | Deny |
| 1703 | [same] | Deny |
| 1704 | [same] | Deny |
| 1778 | Payer mix at hospitals. No compelling reason to seal. | Deny |
| 1804 | Nampa market shares. Concerns issues in case and important to public understanding. | Deny |
| 1805 | [same] | Deny |
| 1806 | [same] | Deny |
| 1807 | [same] | Deny |
| 1808 | [same] | Deny |
| 1809 | [same] | Deny |
| 1810 | [same] | Deny |
| 1811 | [same] | Deny |
| 1953 | Physician compensation discussed in email. Compelling reasons exist to seal. | Seal |
| 1954 | Outline of St. Al's Payer Partnership and Growth Strategy." Contains sensitive business and strategy | Seal |

| | | |
|---|---|---|
| | material that would be damaging if disclosed. Compelling reasons exist to seal. | |
| 2007 | No reason to seal | Deny |
| 2015 | Named physician contract. Compelling reasons to seal. | Seal |
| 2016 | Named physicians discussed. Irrelevant to case. Damaging if revealed. Compelling reasons to seal/ | Seal |
| 2018 | [same] | Seal |
| 2019 | [same] | Seal |
| 2023 | [same] | Seal |
| 2024 | [same] | Seal |
| 2028 | 2013 St. Al's Strategic Update. Contains sensitive business information that would be damaging if released. Irrelevant to case and public understanding. Compelling reasons to seal. | Seal |
| 2029 | [same] | Seal |
| 2031 | West Valley Strategy [same analysis] | Seal |
| 2032 | No compelling reason to seal | Deny |
| 2039 | [same] | Deny |
| 2047 | [same] | Deny |
| 2048 | [same] | Deny |
| 2049 | Compensation discussed. Compelling reasons to seal. | Seal |
| 2050 | [same] | Seal |
| 2053 | No reason to seal | Deny |
| 2055 | Recruitment strategy. Important to issues in case. | Deny |
| 2059 | No reason to seal | Deny |
| 2062 | West Valley Strategy. Discloses sensitive strategy information and would be damaging if disclosed. Compelling reasons to seal. | Seal |
| 2067 | No reason to seal | Deny |
| 2069 | Discussion of individual. Compelling reason to seal | Seal |
| 2070 | Alliance Payer Strategy. Involves interests of non-party and contains sensitive information that would be damaging if released. | Seal |
| 2071 | No reason to seal | Deny |
| 2072 | [same] | Deny |
| 2073 | [same] | Deny |
| 2075 | St. Al's Strategic Plan. Contains sensitive business information, damaging if disclosed. Not important to public understanding. Compelling reasons to seal | Seal |
| 2076 | St. Al's Nampa Facility Improvement Plan. The next 11 Exhibits along with this one all involve analysis and strategic plans for St. Al's Nampa facility. While these exhibits contain sensitive information, this case involves | Deny |

| | | |
|---|---|---|
| | the Nampa market and these exhibits assist the public in understanding the case. The Court finds no compelling reason to seal. | |
| 2077 | [same] | Deny |
| 2078 | [same] | Deny |
| 2079 | [same] | Deny |
| 2080 | [same] | Deny |
| 2081 | [same] | Deny |
| 2082 | [same] | Deny |
| 2083 | [same] | Deny |
| 2084 | [same] | Deny |
| 2085 | [same] | Deny |
| 2086 | [same] | Deny |
| 2087 | [same] | Deny |
| 2097 | Compensation discussed. Sensitive personal and professional information damaging if revealed. Compelling reasons to seal. | Seal |
| 2098 | [same] | Seal |
| 2127 | No reason to seal | Deny |
| 2129 | No reason to seal | Deny |
| 2131 | No reason to seal | Deny |
| 2133 | No reason to seal | Deny |
| 2135 | Compensation discussed. Compelling reasons to seal. | Seal |
| 2136 | No reason to seal | Deny |
| 2137 | [same] | Deny |
| 2140 | [same] | Deny |
| 2141 | [same] | Deny |
| 2142 | [same] | Deny |
| 2149 | Sensitive business information that would be damaging if revealed. Contains nothing to assist public in understanding the case. Compelling reasons exist to seal. | Seal |
| 2150 | [same] | Seal |
| 2151 | St. Al's strategic Financial Plan. Sensitive information, damaging if revealed. Compelling reasons exist to seal. | Seal |
| 2152 | [same] | Seal |
| 2153 | No reason to seal | Deny |
| 2154 | No reason to seal | Deny |
| 2155 | [same] | Deny |
| 2156 | [same] | Deny |
| 2157 | [same] | Deny |
| 2161 | Discussion of individual physician. Compelling reasons to seal. | Seal |
| 2162 | [same] | Seal |

| | | |
|---|---|---|
| 2163 | [same] | Seal |
| 2164 | No reason to seal | Deny |
| 2165 | No reason to seal | Deny |
| 2166 | No reason to seal | Deny |
| 2167 | [same] | Deny |
| 2168 | Surgery Care Affiliates. Sensitive information and compelling reasons to seal. | Seal |
| 2172 | Nampa relocation. No reason to seal | Deny |
| 2185 | No reason to seal | Deny |
| 2186 | Referral history. Compelling reason to seal. | Seal |
| 2187 | [same] | Seal |
| 2265 | Answers to Interrogatories. No reason to seal. | Deny |
| 2284 | No reason to seal | Deny |
| 2288 | Surgeon employment offers. Sensitive personal and professional material, damaging if revealed. Compelling reasons to seal. | Seal |
| 2292 | 2012 St. Al's Strategic Priorities. Sensitive information; damaging if revealed. Compelling reason to seal | Seal |
| 2296 | Email re neurology rotation. No help to public understanding or Court decision. Damaging if revealed. Compelling reasons to seal | Seal |
| 2299 | No reason to seal | Deny |
| 2302 | [same analysis] | Deny |
| 2303 | [same analysis] | Deny |
| 2304 | [same analysis] | Deny |
| 2305 | [same analysis] | Deny |
| 2306 | Compensation of named physician. | Seal |
| 2311 | No reason to seal | Deny |
| 2313 | No reason to seal | Deny |
| 2314 | Compensation of named physician | Seal |
| 2315 | [same] | Seal |
| 2324 | No reason to seal | Deny |
| 2326 | No reason to seal | Deny |
| 2327 | No reason to seal | Deny |
| 2501 | Sensitive business information that would be damaging if revealed. Does not assist public in understanding the case. Compelling reasons exist to seal | Seal |
| 2502 | 2012 CFO discussion and analysis. Sensitive information damaging if revealed. Compelling reasons to seal. | Seal |
| 2503 | St Al's Nampa Financial Improvement Plan. No reason to seal. | Deny |
| 2504 | CFO narrative. No reason to seal | Deny |

| | | |
|---|---|---|
| 2506 | Compensation for named physician. | Seal |
| 2507 | [same] | Seal |
| 2508 | [same] | Seal |
| 2509 | No reason to seal | Deny |
| 2510 | No reason to seal | Deny |
| 2511 | No reason to seal | Deny |
| 2512 | Nampa Financial Income Statement | Seal |
| 2513 | Physician personal information; compelling reason to seal. Not important to public understanding or Court decision. | Seal |
| 2514 | 2012 St. Al's Balance Sheets. Not important to Court decision or public understanding. Sensitive information that would be damaging if disclosed. Compelling reasons to seal. | Seal |
| 2515 | No reason to seal | Deny |
| 2516 | Physician personal information; compelling reason to seal. Not important to public understanding or Court decision. | Seal |
| 2517 | [same] | Seal |
| 2519 | St. Al's Strategic Plan. Not important to Court decision or public understanding. Sensitive information. Compelling reasons to seal. | Seal |
| 2526 | St. Al's Regional Overview. Not important to Court decision or public understanding. Sensitive information. Compelling reasons to seal. | Seal |
| 2527 | [same] | Seal |
| 2528 | [same] | Seal |
| 2529 | [same] | Seal |
| 2530 | No reason to seal | Deny |
| 2531 | Physician personal information. Not important to public understanding or Court decision. Compelling reason to seal. | Seal |
| 2532 | St. Al's 2013-2015 Strategic Overview. Not important to Court decision or public understanding. Sensitive information which would be damaging if revealed. Compelling reasons to seal. | Seal |
| 2533 | No reason to seal | Deny |
| 2534 | [same] | Deny |
| 2537 | [same] | Deny |
| 2538 | [same] | Deny |
| 2539 | Market Strategy Update. Not important to Court decision or public understanding. Sensitive information which would be damaging if revealed. Compelling | Seal |

| | | |
|---|---|---|
| | reasons to seal. | |
| 2541 | St Al's Growth Strategy. Not important to Court decision or public understanding. Sensitive information which would be damaging if revealed. Compelling reasons to seal. | Seal |
| 2544 | No reason to seal | Deny |
| 2545 | Strategic Plan. Not important to Court decision or public understanding. Sensitive which would be damaging if revealed. Compelling reasons to seal. | Seal |
| 2561 | Contract Amendments. No reason to seal | Deny |
| 2619 | No reason to seal | Deny |
| 2620 | Comments on physicians. | Seal |
| 2621 | No reason to seal | Deny |
| 2622 | Not admitted | Not admitted |
| 2639 | No reason to seal | Deny |
| Demo. 5119 et seq | No reason to seal | Deny |

## Saltzer

| Saltzer's Requests for Redaction or Sealing | Court Analysis | Decision |
|---|---|---|
| Tr. 3216 to 3221 | Discussion about decrease in compensation estimated for Saltzer physicians if the deal was unwound. This does contain sensitive information about compensation. But it is general in nature and not tied to any individual physician, and is also crucial for understanding St. Luke's argument that unwinding the deal would prejudice Saltzer physicians. It is important to the Court's decision and to the public's understanding of the case. Accordingly, the Court cannot find compelling reasons to keep it sealed. | Denied |
| Tr. 3223: 3-12 | Discussion of two named physicians and their ability to generate significant revenue for Saltzer. This contains sensitive personal information that would be damaging if disclosed. Compelling reasons exist to seal. | Redact |

| | | |
|---|---|---|
| **Tr. 3224:1-17** | Discussion about how income from Saltzer physicians is allocated to Saltzer's operating costs and salaries. The numbers discussed are hypothetical and no individuals are named. The discussion is important to the public's understanding of the case. No compelling reasons exist to seal. | Denied |
| **Tr. 3224:24-25 3225:1-2 3225:5-13 3225:16-22 3225:25 3227:1-8 3227:11-15 3227:19-25 3228:1-4 3228:7-12 3229:4-7** | [same] | Denied |
| **Tr. 3230 to 3238 3245 to 3252 3254 to 3255** | Discussion from expert for St. Luke's using actual financial data from Saltzer to show how she calculated that Saltzer physicians would see compensation drop by 30% if the deal was unwound. Also contains a critical analysis of opposing testimony that Saltzer could cut costs and avoid compensation reductions. Because this discussion reveals actual financial data such as revenue and overhead, it contains sensitive business information that could be damaging if revealed. On the other hand, this discussion is crucial to the public's understanding of St. Luke's argument that unwinding the deal would prejudice Saltzer physicians. On the whole, the Court cannot find compelling reasons to keep this sealed. | Denied |
| **Tr. 3241:3 to 3243:5** | Discussion of the productivity of three named physicians. This contains sensitive personal information that would be damaging if revealed. It was not important to the Court's decision or to the public's understanding of the case. Compelling reasons exist to justify sealing. | Redact |
| **Tr. 3253:10-14** | Discussion of three named physicians and a specific term of their employment contracts. This contains sensitive personal information that would be damaging if disclosed. It will not assist the public in understanding the case and was not important to the | Redact |

| | Court Analysis | Ruling |
|---|---|---|
| **Tr. 3285:18 to 3286:3**<br>**Tr. 3295:8-13** | Court's decision. Compelling reasons exist to seal. [same] | Redact |
| | Discussion of compensation in general. Important to public understanding. No compelling reason to seal. | Denied |

| Exhibits Saltzer Seeks to Seal | Court Analysis | Ruling |
|---|---|---|
| **8** | No reason to seal | Deny |
| **33** | [same] | Deny |
| **36** | [same] | Deny |
| **1078** | [same] | Deny |
| **1141** | Sensitive information on physician views of Saltzer deal. Played no role in Court decision or public understanding. Compelling reasons exist to seal. | Seal |
| **1143** | Physician compensation material | Seal |
| **1144** | Not admitted | Not admitted |
| **1145** | Not admitted | Not admitted |
| **1146** | Not admitted | Not admitted |
| **1147** | No compelling reason to seal | Deny |
| **1148** | Not admitted | Not admitted |
| **1149** | No compelling reason to seal. | Deny |
| **1152** | Not admitted | Not admitted |
| **1153** | No compelling reason to seal | Deny |
| **1154** | [same] | Deny |
| **1155** | Sensitive personal information | Seal |
| **1156** | [same] | Seal |
| **1157** | No compelling reason to seal | Deny |
| **1159** | [same] | Deny |
| **1160** | Compensation | Seal |
| **1161** | [same] | Seal |
| **1294** | Not admitted | Not admitted |
| **1361** | No reason to seal | Deny |
| **1362** | [same] | Deny |
| **1363** | Compensation | Seal |
| **1364** | No reason to seal | Deny |
| **1365** | [same] | Deny |
| **1368** | Not admitted | Not admitted |
| **1369** | No reason to seal | Deny |

| 1370 | [same] | Deny |
|------|--------|------|
| 1373 | [same] | Deny |
| 1374 | [same] | Deny |
| 1376 | [same] | Deny |
| 1377 | No reason to seal | Deny |
| 1379 | Compensation | Seal |
| 1380 | [same] | Seal |
| 1384 | No reason to seal | Deny |
| 1385 | [same] | Deny |
| 1391 | [same] | Deny |
| 1392 | Compensation | Seal |
| 1393 | No reason to seal | Deny |
| 1394 | [same] | Deny |
| 1399 | [same] | Deny |
| 1400 | Compensation and other terms for named physicians | Seal |
| 1401 | No reason to seal | Deny |
| 1402 | [same] | Deny |
| 1404 | [same] | Deny |
| 1406 | Irrelevant strategic document not important to Court or to public understanding but contains sensitive information to Saltzer which would be damaging if revealed.  Compelling reason to seal. | Seal |
| 1410 | [same] | Seal |
| 1411 | Letter re medical staff. Contains sensitive material not relevant to Court or public. | Seal |
| 1450 | Re SironaHealth, a nonparty.  Irrelevant to Court decision and public understanding and involves third party information which would be damaging if revealed. | Seal |
| 1533 | Not admitted | Not admitted |
| 1534 | Not admitted | Not admitted |
| 1536 | Not admitted | Not admitted |
| 1537 | No reason to seal | Deny |
| 1538 | [same] | Deny |
| 1539 | Compensation | Seal |
| 1663 | No reason to seal | Deny |
| 1699 | Not admitted | Not admitted |
| 1700 | Not admitted | Not admitted |
| 1701 | Not admitted | Not admitted |
| 1702 | No reason to seal | Deny |
| 1703 | [same] | Deny |
| 1704 | [same] | Deny |
| 1761 | Not admitted | Not admitted |

| | | |
|---|---|---|
| **1762** | Not admitted | Not admitted |
| **1763** | Not admitted | Not admitted |
| **1764** | Not admitted | Not admitted |
| **1765** | Not admitted | Not admitted |
| **1766** | Not admitted | Not admitted |
| **1767** | Not admitted | Not admitted |
| **1768** | Not admitted | Not admitted |
| **1861** | Sensitive financial data which would be damaging if revealed. | Seal |
| **1862** | Not admitted | Not admitted |
| **1863** | Sensitive financial data which would be damaging if revealed. | Seal |
| **1864** | Not admitted | Not admitted |
| **1866** | Not admitted | Not admitted |
| **1867** | Not admitted | Not admitted |
| **1868** | Not admitted | Not admitted |
| **1869** | Not admitted | Not admitted |
| **1870** | Not admitted | Not admitted |
| **1871** | Not admitted | Not admitted |
| **1872** | Not admitted | Not admitted |
| **1873** | Not admitted | Not admitted |
| **1874** | Not admitted | Not admitted |
| **1875** | Not admitted | Not admitted |
| **1876** | Not admitted | Not admitted |
| **1877** | Not admitted | Not admitted |
| **1878** | Not admitted | Not admitted |
| **1879** | Not admitted | Not admitted |
| **1880** | Not admitted | Not admitted |
| **1881** | Not admitted | Not admitted |
| **1882** | Not admitted | Not admitted |
| **1883** | Not admitted | Not admitted |
| **1884 to 1945** | Not admitted | Not admitted |
| **1992** | Not admitted | Not admitted |
| **2013** | No reason to seal | Deny |
| **2021** | No reason to seal | Deny |
| **2065** | No reason to seal | Deny |
| **2089** | [same] | Deny |
| **2091** | [same] | Deny |
| **2092** | [same] | Deny |
| **2093** | [same] | Deny |
| **2099** | Not admitted | Not admitted |
| **2192** | Discussion of confidential financial concerns which would be damaging if revealed.  Compelling reasons | Seal |

| | | |
|---|---|---|
| | to seal | |
| 2193 | No reason to seal | Deny |
| 2197 | [same] | Deny |
| 2198 | [same] | Deny |
| 2205 | [same] | Deny |
| 2209 | Not admitted | Not admitted |
| 2226 | Not admitted | Not admitted |
| 2257 | No reason to seal | Deny |
| 2273 | This was a letter from Nancy Powell that contains information regarding physician fee schedules and so there are compelling reasons to keep it sealed. | Sealed |
| 2274 | [same] | Sealed |
| 2278 | [same] | Seal |
| 2279 | [same] | Seal |
| 2280 | [same] | Seal |
| 2281 | [same] | Seal |
| 2283 | No reason to seal | Deny |
| 2285 | No reason to seal | Deny |
| 2523 | Physician compensation matters discussed | Seal |

## Treasure Valley Hospital

| Treasure Valley Hospital's Requests for Redaction or Sealing of Trial Testimony | Subject Matter | Decision |
|---|---|---|
| Tr. 998:1-11 | Discussion of the mix of patients seen at Treasure Valley Hospital (TVH) – that is, which insurer is covering these patients.  It contains some sensitive business information but its importance to the public's understanding and the Court's decision outweighs its sensitive nature.  No compelling reason to seal. | Denied |
| Tr. 1029:1 to 8 | Discussion of 2011 & 2012 utilization rates at TVH. It contains some sensitive information but is important to issues in the case – no compelling reason to seal. | Denied |

| Deponent | Redaction | Subject of Testimony | Decision |
|---|---|---|---|
| Tr. 1044:19 to 1050:1 | | [same] | Denied |
| Tr. 1049:4 to 1051:24 | | Discussion of utilization figures for two named surgeons. This contains sensitive personal information and was not important to the Court's decision or public understanding as was the general utilization data discussed above and ordered disclosed. Unlike that general data, this specific data names two individual surgeons and so there is a compelling reason to keep it sealed. | Redacted |
| Tr. 1051 to 1057 | | No compelling reason to seal | Denied |
| Tr. 1057:17 to 1061:11 | | Discussion of financial viability of TVH. It contains sensitive business data but is important to effect of Saltzer deal on competitors, and TVH's claim of injury. On the whole, the Court cannot find compelling reasons to keep this sealed. | Denied |
| Tr. 1065:15 to 1093:24 | | [same] | Denied |
| Tr. 1102 – 1119 | | Discussion of utilization at TVH from 2011 to 2013, and the reasons behind the numbers, along with other financial information. Once again, this includes sensitive business data, but at the same time is crucial to TVH's claim of harm. On the whole it is too important to the public's understanding and the Court's decision and this outweighs the sensitive nature of the material – there is no compelling reason to seal. | Denied |
| Tr. 1581 to 1587 | | Discussion by expert Dr. Haas-Wilson that TVH surgical cases are rising, not falling. No compelling reason to seal. | Denied |
| Tr. 2995 to 2998 | | Discussion of TVH volume of surgeries without revealing any individual surgeon numbers. No compelling reason to seal. | Denied |
| 3196:2 to 3197:16 | | Discussion of three named physicians and their practices. Not important to Court decision or public understanding. Contains sensitive personal information. Compelling reasons exist to seal. | Redacted |

| | Requested (by TVH) | | |
|---|---|---|---|
| Dr Curran (with Saltzer) | 81:4-7 | Discusses personal compensation. Contains sensitive personal information but is not important to Court decision or public understanding. Compelling reasons exist to seal. | Redacted |
| Dr. Curran | 84:2-10 | Contains sensitive personal information about investment. Not important to Court decision or public understanding. Compelling reasons exist to seal. | Redacted |
| Dr. Curran | 88:11-24 | Further discussion of personal compensation. Contains sensitive personal information but is not important to Court decision or public understanding. Compelling reasons exist to seal. | Redacted |

| Exhibits TVH Wants Sealed | Court Analysis | Ruling |
|---|---|---|
| 1655 | Names individual physicians. Professional and personal information; damaging if revealed. Compelling reasons to seal | Seal |
| 1656 | TVH detailed income statement for 2011. Sensitive business information; damaging if revealed. Compelling reasons to seal | Seal |
| 1657 | [same] | Seal |
| 1963 | Physician case count, naming individual physicians. Sensitive information – compelling reasons to seal | Seal |
| 1964 | [same] | Seal |
| 1965 | [same] | Seal |
| 1966 | [same] | Seal |
| 2026 | No reason to seal | Deny |
| 2090 | No reason to seal | Deny |
| 2102 | No reason to seal | Deny |
| 2103 | TVH Competitive Advantage and Clinical Performance. Sensitive information which would be damaging if revealed. Compelling reason to seal. | Seal |

| | | |
|---|---|---|
| **2106** | No reason to seal | Deny |
| **2107** | No reason to seal | Deny |
| **2111** | No reason to seal | Deny |
| **2112** | TVH detailed income statement for 2009. Given its age, no reason to seal. | Deny |
| **2113** | TVH detailed income statement for 2010. Given its age, no reason to seal. | Deny |
| **2114** | TVH detailed income statement for 2011. Sensitive business data more recent than statements above and thus compelling reasons to seal | Seal |
| **2115** | [for 2012] [same analysis] | Seal |
| **2118** | No reason to seal | Deny |
| **2119** | TVH Balance Sheet for 2011. See analysis above. | Seal |
| **2122** | No reason to seal | Deny |
| **2123** | No reason to seal | Deny |
| **2124** | No reason to seal | Deny |
| **2125** | No reason to seal | Deny |
| **2262** | No reason to seal | Deny |
| **2263** | No reason to seal | Deny |
| **2264** | No reason to seal | Deny |
| **2266** | No reason to seal | Deny |
| **2269** | No reason to seal | Deny |
| **2636** | No reason to seal | Deny |
| **2637** | No reason to seal | Deny |
| **2641** | No reason to seal | Deny |
| **2642** | No reason to seal | Deny |
| **2644** | No reason to seal | Deny |
| **2645** | No reason to seal | Deny |
| **2646** | No reason to seal | Deny |
| **Demos. 3001 et seq** | No reason to seal | Deny |
| **Demos 5088 & 5119** | No reason to seal | Deny |

**Blue Cross**

The Court has already resolved, in its decision unsealing the Findings and

Conclusions, some of Blue Cross's requests to seal or redact certain testimony and

exhibits. For example, the Court rejected Blue Cross's request to redact any reference to its experience in Twin Falls with the Physician Center. That experience, the Court reasoned, "is nearly five years in the past, an eternity in this fast moving field, and there is no discussion of personal compensation, future strategy, or sensitive details in this brief account. There may be a minor competitive disadvantage from revealing the incident, but it pales before the public's right to understand the Court's analysis."

The Court applied the same analysis to the attempts to redact statements that (1) St Luke's or Saltzer are "must have" providers in the Blue Cross network, (2) that Blue Cross would not have a "sustainable product" without them, and (3) that the Acquisition would take away a health insurer's best outside option and make negotiations more difficult. These are very general statements and were repeated in various forms by so many witnesses that they are essentially matters of common knowledge.

Blue Cross objected to revealing specific figures and percentages regarding hospital-based billing. The practice of hospital-based billing has been widely publicized, however. *See* Rosenthal, *"As Hospital Prices Soar, a Stitch Tops $500,"* New York Times (Dec. 2, 2013); Brill, *"Bitter Pill,"* Time Magazine (Feb. 20, 2013). While revealing those numbers may offer some insight to competitors, the prejudice is not great when compared to the powerful insight those figures offer to the public trying to understand how the Court arrived at its decision.

Blue Cross also wanted to redact any reference to its reimbursement to St Luke's growing from an average amount in 2007 to a top-five amount in 2012. Again, the bargaining leverage that St. Luke's has with payors is well-known within the industry,

and confirming that with figures causes no great competitive harm. Given the testimony at trial, St. Luke's position at the top of the reimbursement list will not surprise anyone.

Blue Cross also wanted to redact references that it pays more than Medicare for some provider services. Blue Cross complains that these figures will disclose to its competitors the reimbursement rates it has negotiated with hospitals and physicians. But the references do not reveal any reimbursement rates paid to hospitals or doctors, and only point out that Blue Cross pays more than Medicare without breaking down the recipients of those reimbursements. Such a general discussion can do little competitive harm, but the paragraph is vital to demonstrate the current status of health care prices in Idaho.

These are some of the general considerations that the Court has used to resolve specific requests by Blue Cross to keep testimony and documents sealed. More specific explanations are contained in the chart below that covers each item that Blue Cross wanted to remain sealed.

| Blue Cross Request for Redaction | Subject Matter | Decision |
|---|---|---|
| Couch Trial Testimony 182:8-19 | Specific dollar amounts that Blue Cross reimburses St Luke's Hospital, and general range for other hospitals. various hospitals throughout the state. The relative reimbursement rates are crucial to an understanding of the Court's analysis, and were ordered unsealed in a separate decision by the Court unsealing the Findings and Conclusions. The analysis changes with regard to the specific dollar figure identified as Blue Cross's annual reimbursement to St. Luke's. That sum is not necessary to understanding this case, and would prejudice Blue Cross in its negotiations. Thus, the Court | Redact only the dollar amount on line 19 of page 182. |

| | | |
|---|---|---|
| | will strike only that dollar amount. There is another specific dollar amount named, but it is not attributed to any specific hospital and will remain unredacted to provide context. | |
| **Couch Trial Testimony 199:18 to 201:3** | Discussion of specific negotiations with a provider in Burley, including evaluation of that provider's medical practices. This was not mentioned by the Court in its Findings and Conclusions and plays no role in understanding the case. It could affect the reputation of a non-party provider that could cause substantial harm. There is no countervailing reason to reveal the provider's name. | Redact |
| **Couch Trial Testimony 230 to 251** | The Court rejects Blue Cross's request to redact this testimony. A large section of this discussion involves the Twin Falls/Physician Center experience that the Court has already ordered must be unsealed. It also contains a general discussion of the way Blue Cross negotiates contracts that is so general as to be harmless. It includes a discussion of "Best-Alternative-To-Negotiated-Agreement" or BATNA, that the Court has already ordered must be unsealed. | Denied |
| **Couch Trial Testimony 253:14** | The Court rejects Blue Cross's request to redact this testimony. It discusses how St. Luke's acquisition of Saltzer would cause the prices of ancillary services to rise. This issue of "hospital billing" was ordered by the Court to be unsealed in its prior decision. | Denied |
| **Couch Trial Testimony 261-268** | The Court rejects Blue Cross's request to redact specific dollar figures showing the increase in costs for various medical procedures due to "hospital billing." The specific dollar sums are crucial to understanding this concept which is in turn crucial to understanding this case and the Court's analysis. Whatever prejudice Blue Cross might suffer is slight when compared to the right of the public to have this information. | Denied |
| **Couch Trial Testimony 271:3 to 277:7** | Discussion of Blue Cross negotiations with St Luke's over a specific medical clinic acquired by St. Luke's and Blue Cross charges of overbilling. The negotiations were triggered by an individual's experiences that might lead to his/her identification. The negotiations are discussed in detail and reveal Blue Cross's negotiating strategy. The incident was not mentioned in the Court's decision and is not necessary to the public's | Redacted |

| | understanding of the case. | |
|---|---|---|
| **Couch Trial Testimony 277:16 to 292:25** | Discussion of how costs rise after St. Luke's acquires a physician practice. Blue Cross does not regard St. Luke's as an efficient provider of care. Data from 2007 to 2012 is discussed as part of Blue Cross negotiations with St. Luke's over reimbursement rates. The reimbursement rates of various Idaho hospitals are compared generally, but no other hospitals are identified by name. The Court has already unsealed the gist of this testimony – that Blue Cross reimbursement rates to St. Luke's went from about average for Idaho hospitals in 2007 to one of the highest by 2012. The testimony in these 15 pages is (1) crucial to the public's understanding of this case (2) old enough in some cases that it is hard to imagine any harm resulting from revealing it, and (3) general enough that specific hospitals other than St. Luke's are not identified. Thus, the Court will deny Blue Cross's request to redact this testimony. | Denied |
| **Couch Trial Testimony 294-296** | Discussion of the effect on pricing of St. Luke's market power. | Denied |
| **Couch Trial Testimony 296:18 to 302:1** | Discussion of the specific financial details of the agreement between Blue Cross and St. Luke's for the years 2012 and 2013. These financial details played no role in the Court's decision and would be damaging if revealed. | Redact |
| **Couch Trial Testimony 303:17 to 308:12** | Discussion of agreement between Blue Cross and St. Luke's regarding Medicare Advantage program. Blue Cross profit margins are discussed. Individual physician is evaluated. None of these matters played any role in the Court's decision and none help the public understand this case. The material is highly sensitive and would be damaging if revealed | Redact |
| **Couch Trial Testimony 308:20 to 312:20** | Discussion of patients wanting care in the community where they reside. If St. Luke's acquires Saltzer, it will weaken Blue Cross negotiating strength. This is crucial information for the public to understand this case and was crucial to the Court's analysis. Moreover, it is not so sensitive that it would be unduly prejudicial to reveal. | Denied |
| **Couch Trial Testimony 313:19 to 315:2** | Discussion of the importance of having St. Luke's in any network. Explaining that a network insurance plan entitled ConnectedCare was not successful because St. Luke's was not in the network. This is crucial to | Denied |

| | | |
|---|---|---|
| | understanding the case and an important part of the Court's decision. Nothing here appears unduly prejudicial. | |
| **Couch Trial Testimony 326:2-6** | Specific membership numbers for Blue Cross identified. Not important to the case and highly prejudicial if revealed | Redacted |
| **Couch Trial Testimony 328:13 to 329:3** | Blue Cross is concerned that St. Luke's is offering preferential reimbursement rates to its own insurer, Select Health, and requiring high reimbursement rates from Blue Cross. This is a matter between St. Luke's and Blue Cross over which they have negotiated, and so there is nothing confidential as between those two entities. Moreover, the discussion does not affect any third parties, so is not confidential in that sense. St. Luke's market power is important to an understanding of this case. It lacks prejudice because it expresses an obvious concern – most observers probably already assumed St. Luke's was giving preferential treatment to Select Health so there is nothing new here. | Denied |
| **Couch Trial Testimony 330:17 to 331:1** | [same] | Denied |
| **Couch Trial Testimony 331:6 to 333:8** | Despite testifying that Saltzer is a "must-have" provider in any network, Blue Cross has resisted all attempts by Saltzer over the years to negotiate physician fee amounts about the statewide fee schedule. This is important to understanding the case and creates little prejudice | Denied |
| **Couch Trial Testimony 335:20 to 344:20** | Discussion of 2013 presentation Blue Cross made to St. Luke's to persuade them that their reimbursement rates were too high. There is a general discussion about how St. Luke's rates compare to other Idaho hospitals, but no other hospitals are identified by name. This discussion falls into the category of information unsealed by the Court's earlier decision, concerning St. Luke's ranking amongst other Idaho hospitals. | Denied |
| **Couch Trial Testimony 345:23 to 349:23** | Discussion of Blue Cross negotiations with St. Luke's over reimbursement rates including the specific percentage increases proposed by each party throughout the negotiations. The specific figures could be used by competitors and could be damaging to future negotiations with third parties. The specific percentage figures do not assist the public in understanding the case | Redacted |

| | | |
|---|---|---|
| | and were not mentioned or considered by the Court in its decision. | |
| **Couch Trial Testimony 353:16 to 360:10** | Discussion of (1) Blue Cross strategy for negotiating reimbursement rates with hospitals; (2) St. Luke's profit margins; and (3) the financial impact of Medicare on St. Luke's financial performance. These are highly sensitive matters that would be damaging if revealed to competitors, and they add little to the public's understanding of this case. They were not mentioned in the Court's decision. | Redacted |
| **Couch Trial Testimony 360:10 to 363:18** | The Court ordered that this testimony be stricken. *See Transcript at pg. 363:12-17.* The Court was ruling that it was hearsay, not that it was confidential. The testimony was based on an article in the local newspaper and thus cannot be considered confidential, | Denied |
| **Couch Trial Testimony 364:24 to 365:10** | Discussion of hospital-based billing. The Court has ordered this unsealed, as discussed in detail above. | Denied |
| **Couch Trial Testimony 366:17 to 367:7** | [same] | Denied |
| **Couch Trial Testimony 368:15-20** | General discussion of online site | Denied |
| **Couch Trial Testimony 372:3 to 396:5** | Discussion of Twin Falls experience with Physician Center. This issue was unsealed by the Court in its prior decision. There is also a lengthy discussion of a past dispute between Blue Cross and St. Luke's over the acquisition of a surgery center by St. Luke's. Blue Cross was concerned that St. Luke's would seek higher reimbursement rates for the same procedures done at the same facility simply because it had been acquired by the hospital. This dispute illustrates the nature of hospital-based billing, an issue the Court has ordered must be unsealed because it is a key to this case and a key to the public's understanding of this litigation. Accordingly, the Court will reject this attempt to redact this testimony. | Denied |
| **Couch Trial Testimony 397:9 to 398:10** | General discussion of gain-sharing and risk-sharing that appears to lack any real prejudice. | Denied |
| **Couch Trial Testimony** | Discussion of risk-based contracting between Blue Cross and St. Luke's. This is an issue in the case and does not | Denied |

| | | |
|---|---|---|
| **398:11 to 405:16** | appear to be prejudicial. | |
| **Couch Trial Testimony 409:5-10** | Discussion about how Blue Cross reimbursement rates for physician services are higher than the Idaho adjusted Medicare fee schedules. The discussion is brief and no individual providers are named. This discussion falls into the category already unsealed by the Court, as discussed above. | Denied |
| **Couch Trial Testimony 410:21 to 411:2** | [same] | Denied |
| **Couch Trial Testimony 411:13 to 415:25** | Discussion of Blue Cross study showing the effect of St Luke's acquisition of a physician's practice on the amounts that Blue Cross pays to that practice for physician services. This is a document that only involves St. Luke's and Blue Cross. Blue Cross has argued for years to St. Luke's that its acquisitions are driving up costs, so there is nothing confidential about this study as between St. Luke's and Blue Cross, and there is also nothing that would affect any third parties. Hence, the Court will not redact this testimony. | Denied |
| **Couch Trial Testimony 426:3** | Discussion of how outpatient surgery costs go up 289% when a surgery practice is acquired by St. Luke's. This falls into the category of hospital-based billing that the Court has ordered must be unsealed. | Denied |
| **Couch Trial Testimony 426:5** | [same] | Denied |
| **Couch Trial Testimony 430:7 to 432:25** | Discussion of how St. Luke's uses its market power and size to force concessions from Blue Cross. This is certainly well-known between Blue Cross and St. Luke's and so is not confidential as between those two entities. And there is nothing in this discussion that would affect third parties, or that would affect Blue Cross's negotiations with third parties. | Denied |
| **Couch Trial Testimony 433:9 to 434:12** | [same] | Denied |
| **Couch Trial Testimony 440:11-12** | [same] | Denied |
| **Couch Depo** | Discussion of Blue Cross dispute with St. Luke's over | Denied |

| | | |
|---|---|---|
| **295:7-20** | their failure to give advance warning about the purchase of a surgical center. This has been fully discussed above, and the Court explained its refusal to redact. That same analysis applies here. | |
| **Couch Depo 314:16-21** | Discussion of available providers in market if St. Luke's and Saltzer are unavailable. The discussion is quite general and nothing confidential appears on its face. No compelling reason to seal. | Denied |
| **Couch Depo 348:12-17** | Discussion about physician fees not increasing after St. Luke's acquired physician practice. The discussion is very general and no specific fee figures are discussed. No compelling reason to seal this. | Denied |
| **Couch Depo 342:4-13** | This is a small part of a longer discussion about a specific clinic acquired by St. Luke's. The small part Blue Cross seeks to redact notes that Blue Cross reimbursement to the clinic decreased after it was acquired by St. Luke's. But that same point is made throughout the discussion in portions that Blue Cross does not seek to seal. Thus, there is nothing confidential in this small portion, and no compelling reason to seal it. | Denied |
| **Couch Depo 347:19-25** | [same] | Denied |
| **Exhibit 1193** | This is a memo summarizing a meeting between Blue Cross and St. Luke's officials in 2012 and contains detailed financial information about Medicare Advantage. It also contains a detailed summary of their negotiations and a strategy for future collaboration. This would be highly damaging if revealed to competitors. This is a compelling reason to seal | Sealed |
| **Exhibit 1331** | Not admitted | Denied (not admitted) |
| **Exhibit 1481** | 2012 email string concerning Blue Cross concerns over "hospital billing" issues with the Saltzer transaction. This is a crucial issue and is necessary for the public to understand the case and the Court's analysis. There is no compelling reason to seal it. | Denied |
| **Exhibit 1482** | [same as Joint Exhibit 2 – see below] | Redact only the quoted paragraph from the hospital |

| | | |
|---|---|---|
| | | contract. |
| **Exhibit 1567** | Not admitted | Denied (not admitted) |
| **Exhibit 1604** | 2012 letter from St. Luke's to Blue Cross containing detailed negotiating positions for 2013 reimbursement contract. This is sensitive information that if revealed to competitors would be damaging. Thus, there are compelling reasons to seal it. | Sealed |
| **Exhibit 1622** | This letter contains a multi-page list of physicians, their practice location, and their tax identification numbers. This is sensitive personal information and, accordingly, there are compelling reasons to seal it. | Sealed |
| **Exhibit 1296** | This is a memo summarizing a 2010 meeting between officials from St. Luke's and Blue Cross concerning the dispute over St. Luke's purchase of a surgical center (and increasing its billing rates) without notifying Blue Cross. The Court has discussed above why it refuses to redact this discussion – it illustrates hospital billing, a major issue in this case. Although it may reveal some negotiating strategy, the memo is four years old and there is no compelling reason to redact it. | Denied |
| **Exhibit 1297** | This is the Settlement Agreement between St. Luke's and Blue Cross that settled the legal dispute over St. Luke's failure to give notice before it purchased a clinic and starting billing at higher hospital rates. It concerns St. Luke's negotiating power and the issue of hospital billing and there appears no compelling reason to keep it a secret. | Denied |
| **Exhibit 1298** | This is a "Summary of Reimbursement Trends" showing how the billings from two orthopedic clinics increased once they were purchased by St. Luke's. This demonstrates the hospital billing issue that was a key to the Court's decision. While it is crucial to the public's understanding of the Court's analysis, there appears little reason to keep it confidential. No individual physicians is mentioned – the information is limited to the types of surgeries done and the billing rates. | Denied |
| **Exhibit 1299** | This is a series of PowerPoint slides prepared by Blue Cross as part of their negotiations with St. Luke's over the 2012/2013 reimbursement contract. It contains comparisons with other hospitals in Idaho, and gives dollar figures for reimbursements to those other hospitals | Sealed |

| | | |
|---|---|---|
| | that would be confidential and sensitive. The Court has already revealed (in its Findings and Conclusions) how St. Luke's compares to other hospitals without revealing the names of the other hospitals. This document goes further and names the hospitals and gives specific dollar figures for reimbursement for those other hospitals, none of which are parties in this case. There are thus compelling reasons to seal this exhibit | |
| Exhibit 1300 | This document again compares St. Luke's to other hospitals but unlike Exhibit 1299, it does not name hospitals that are not parties to this case. There is no compelling reason to seal this exhibit. | Denied |
| Exhibit 1301 | This is a Memo of Understanding between St. Luke's and Blue Cross concerning reimbursements for 2013 and 2014. This Memo contains the specific results of an agreement between these parties on various reimbursement rates for the years mentioned. There is a compelling reason to seal this because it reveals current and future specific rate information that will harm Blue Cross's negotiating ability with other providers. | Sealed |
| Exhibit 1555 | This is a Blue Cross "2010 Quality Program Evaluation." It discusses the care patients received without naming any specific hospitals or physicians. There is no compelling reason to seal it. | Denied |
| Exhibit 1556 | [same for 2011] | Denied |
| Exhibit 1557 | [same for 2012] | Denied |
| Exhibit 1561 | Not admitted | Denied (not admitted) |
| Exhibit 1578 | Not admitted | Denied (not admitted) |
| Exhibit 2143 | No compelling reason to seal. | Denied |
| Exhibit 2144/2543 | Blue Cross Business Plan and Budget for 2013 to 1015. See discussion below for Exhibit 2145. | Sealed |
| Exhibit 2145 | Blue Cross Business Plan and Budget for 2012 to 2014. This contains 29 pages of sensitive financial information and business strategy. It contains nothing that the Court relied upon in its decision or that the public needs to understand this case. At the same time, it would be very damaging if revealed to competitors and providers. There are compelling reasons to seal it. | Sealed |
| Exhibit 2146 | Not admitted | Denied |

| | | |
|---|---|---|
| | | (not admitted) |
| **Exhibit 2147** | This is the contract rates for the 2011 Statewide Physician fee schedule.  As such, it is sensitive information regarding physician fees and there are compelling reasons to seal it. | Sealed |
| **Exhibit 2148** | This is a chart prepared by Blue Cross showing each medical practice that St. Luke's has acquired since 2007 and notes how insurance reimbursements to those practices changed after the acquisition.  The chart is relevant to the hospital billing issue.  That issue is important to the Court's analysis and to the public's understanding of the case.  These factors outweigh whatever sensitive nature the information presents, and the Court cannot find compelling reasons to keep it sealed. | Denied |
| **Exhibit 2242** | This exhibit describes Accountable Care Organizational strategy.  It played no role in the Court's decision and contains nothing of importance to the decision or to the issues.  Because it contains sensitive business strategy there are compelling reasons to seal it. | Sealed |
| **Exhibit 2243** | Not admitted | Denied (not admitted) |
| **Exhibit 2248** | This exhibit recites the relationship between St. Luke's and Saltzer, crucial to the Court's opinion and without compelling reason to redact. | Denied |
| **Exhibit 2271** | This is a letter written by Dr. Randell Page that was not discussed during his testimony and so was not important to the Court's decision and the Court finds compelling reasons to seal it. | Sealed |
| **Exhibit 2272** | [same] | |
| **Exhibit 2273** | This was a letter from Nancy Powell that contains information regarding physician fee schedules and so there are compelling reasons to keep it sealed. | Sealed |
| **Exhibit 2274** | [same] | Sealed |
| **Exhibit 2275** | This letter concerns physician rates and there are compelling reasons to seal it. | Sealed |
| **Exhibit 2318** | Not admitted | Denied (not admitted) |
| **Exhibit 2323** | This letter contains no compelling reason to seal. | Denied |
| **Exhibit 2324** | This is a master concept document regarding | Sealed |

| | | |
|---|---|---|
| | ConnectedCare, an accountable care organization. It played no role in the Court's analysis and will not assist the public in understanding this case. For these reasons and because it contains sensitive business strategy of a non-party there are compelling reasons to seal it. | |
| **Exhibit 2543** | This is the Business Plan and Budgets for 2013 to 2015. This is essentially the same as Exhibit 2245 (and the same as Exhibit 2244). See that analysis. For the same reasons, the Court will seal this. | Sealed |
| **Exhibit 2582** | This is a 4-year old letter and there are no compelling reasons to seal | Denied |
| **Exhibit 2583** | Contains summary of 2010 St. Luke's proposal to Blue Cross for increase in reimbursement and also contains historical figures from 2008 and 2009. This is old enough that although sensitive, there are no compelling reasons to order it sealed. | Denied |
| **Exhibit 2584** | This contains a document that details Blue Cross strategy for negotiations with large hospitals. It contains sensitive business strategy information that would be damaging if revealed. It played no role in the Court's analysis. | Sealed |
| **Exhibit 2585** | This is an e-mail regarding the 2010 surgery center dispute between St. Luke's and Blue Cross that the Court has already decided that no compelling reasons exist to keep this sealed. | Denied |
| **Exhibit 2586** | This is a 4-year old e-mail and there are no compelling reasons to seal. | Denied |
| **Exhibit 2587** | [same as Joint Exhibit 9 – see below] | Sealed |
| **Exhibit 2588** | This is a 2012 letter from Milliman to Jeff Crouch at Blue Cross comparing Blue Cross physician-allowed fees to benchmark data for 2010. Because it deals with physician fees, the Court finds compelling reasons to keep it sealed. It played no role in the Court's analysis and is not important to an understanding of this case. | Sealed |
| **Exhibit 2589** | This is a 2012 internal Blue Cross memo to the Board of Directors regarding St. Luke's SelectHealth insurance product. It discusses the negotiations with St. Luke's over the 2013 reimbursement contract. This discussion is somewhat sensitive but nothing surprising – the memo discusses the obvious competition between St. Luke's SelectHealth and St. Al's ConnectedCare. There are no compelling reasons to keep this sealed. | Denied |
| **Exhibit 2590** | No compelling reasons to seal. | Denied |

| | | |
|---|---|---|
| **Exhibit 2591** | No compelling reasons to seal. | Denied |
| **Exhibit 2616** | This agreement between St. Luke's and Blue Cross is more than 5 years old and there is no compelling reason to seal it. | Denied |
| **Exhibit 2617** | This is the Facility Contract – Commercial between St. Luke's and Blue Cross setting reimbursement policy and rates for 2012. It is highly confidential and plays no role in the Court's decision or in the public's understanding of the case. There are compelling reasons to seal it. | Sealed |
| **Exhibit 2626** | Not admitted | Denied (not admitted) |
| **Exhibit 2630** | Not admitted | Denied (not admitted) |
| **Joint Exh 2** | This is a 2012 letter from Todd York, Blue Cross Manager for Provider Contracting, to Randy Billings of St. Luke's stating an expectation that ancillary services performed at Saltzer will not be billed out at higher St Luke's rates. This does contain a quoted paragraph from the most recent contract between Blue Cross and St. Luke's concerning the billing of ancillary services after purchase of a clinic or medical practice. The Court does find compelling reasons to seal the quoted paragraph from the contract but the remainder of the letter must not be sealed. | Redact only the quoted paragraph from the hospital contract. |
| **Joint Exh 9** | This is a 2011 e-mail from Randy Billings at St. Luke's to Jeff Crouch at Blue Cross discussing a new negotiating strategy. It contains nothing that would help the public understand this case or the Court's decision, and it does contain sensitive negotiating information that could be damaging if revealed to competitors. There are compelling reasons to seal this. | Sealed |
| **Joint Exh 10** | 2012 document from St. Luke's including specific financial information from 2008 to 2012 as part of a presentation to Blue Cross for negotiating a new reimbursement contract. This document contains highly sensitive financial information that would damage St. Luke's if it was revealed to competitors and would damage Blue Cross's ability to negotiate with others. This provides a compelling reason to seal. | Sealed |
| **Joint Exh 11** | [similar to Joint Exhibit 2 – see above] | Seal only the quoted |

| | | |
|---|---|---|
| | | paragraph from the hospital contract |
| **Joint Exh 19** | This is Blue Cross's analysis of its negotiations with St. Luke's in 2010 over reimbursement rates. It contains specific numbers and specific percentages for planned increases proposed by St. Luke's. Given that it discusses negotiations 4 years in the past, the Court can find no compelling reason to seal it. | Denied |

## Imagine Health

Imagine Health is not a party to this action but their Director Jackie Butterbaugh was subpoenaed by the parties as a third-party witness, and she testified in a deposition. Imagine Health asks the Court to seal certain portions of her testimony and certain exhibits introduced through her.

Much of Butterbaugh's testimony concerns Imagine's business strategies, both in general and with regard to specific negotiations. For example, she discusses (1) Imagine's process for selecting physicians to add to their network, including an assessment of their skills; (2) Imagine's strategies for growth in Boise, and their targeting of certain regions in Idaho for future growth; (3) the details of their negotiations with Micron and Primary Health; and (4) pricing terms of Imagine's deals with providers.

The Chief Financial Officer and General Counsel at Imagine Health, Howard Young, has filed his affidavit asserting that the portions of Butterbaugh's testimony that Imagine seeks to seal includes "sensitive confidential information of Imagine Health, including trade secrets." *See Young Affidavit (Dkt. No. 339-1).* The Court's review

confirms this allegation. Much of Butterbaugh's testimony could be used by competitors to gain a significant advantage over Imagine Health. Importantly, Imagine Health was forced by subpoena to divulge this information, and is not a party in this lawsuit. Moreover, the Court's Findings and Conclusions do not mention Imagine Health or Butterbaugh, and there is nothing in her testimony or the associated exhibits that is necessary for the public to understand the Court's analysis.

Based on all these circumstances, the Court finds compelling reasons for sealing much of Butterbaugh's testimony and the associated exhibits. The following tables are the result of the Court's line-by-line review of Butterbaugh's testimony and will identify with specificity those pages and lines of her deposition and trial testimony that is to be redacted. The Court also includes a table of the exhibits that must remain sealed.

| Deposition of Jackie Butterbaugh (and related Exhibits) | | |
|---|---|---|
| **Page and Lines & Exhibits** | **Subject Matter** | **Decision** |
| 10:15 to 12:8 | Discussion of how Imagine picks providers to be included in their network | Redact. |
| 13:3 to 15:3 | [same] | Redact |
| 16:2 to 17:21 | Discussion of Imagine's business strategy | Redact |
| 19:18 to 19:25 | Discussion of regions that Imagine is targeting for future growth | Redact |
| 20:1 to 22:21 | Imagine's strategies for growth in Boise | Redact |
| 24:25 to 28:7 | Imagine's negotiations with Micron | Redact |
| 28:13 to 29:22 | Imagine's process for selecting doctors for its network | Redact |
| 31:9 to 32:25 | Imagine's negotiations with Saltzer to get it to join Imagine's network | Redact |
| 34:1 to 36:4 | Imagine's discussions with SL and IPN over their involvement in a PPO for Micron | Redact |
| 52:15 to 53:2 | Not a confidential discussion | Denied |

| | | |
|---|---|---|
| 53:8-25 | Imagine's assessment of skills of physicians added to its network | Redact |
| 56:8 to 57:7 | Imagine's quality comparison report on SA and SL | Redact |
| 57:23-24 | Imagine's attempts to solicit business from employers other than Micron | Redact |
| 58:6-23 | [same] | Redact |
| 59:1-7 | Discussion of employer's use of another network | Redact |
| 65:12-19 | Imagine's method for identifying high quality medical providers | Redact |
| 66:2 to 67:8 | [same] | Redact |
| 67:18-21 | Imagine's contract with Micron | Redact |
| 68:4 to 69:24 | The key criteria for the network that Imagine created for Micron | Redact |
| 70:15 to 70:25 | [same] | Redact |
| 71:23 to 72:4 | Imagine's success with guarantee in Micron contract | Redact |
| 72:14 to 72:17 | Not a confidential discussion | Denied |
| 74:2-8 | Micron's use of St. Al's and St. Luke's | Denied |
| 80:10-15 | Discussion of volume of Imagine's business and its source | Redact |
| 82:4-23 | Not a confidential discussion | Denied |
| 85:1-10 | Imagine's negotiations with Primary Health Medical Group | Redact |
| 84;1-23 | Imagine's negotiations with SL | Redact |
| 105:2-25 | Discussion of named physician leaving Imagine's network | Redact |
| 106:24 to 107:14 | Discussion of Imagine's analysis of specific group of physicians. | Redact |
| 110:16 to 111:18 | Discussion of conflicts arising when physicians own clinics and naming specific physicians | Redact |
| 112:18 to 113:4 | Imagine's negotiations with Micron | Redact |
| 114:15 to 115:8 | [same] | Redact |
| 115:15-25 | [same] | Redact |
| 116:11 to 117:22 | [same] | Redact |
| 118:1-4 | [same] | Redact |
| 120:20 to 121:7 | [same] | Redact |
| 121:11 to 122:24 | Imagine negotiations with Home Depot | Redact |
| 123:7-24 | [same] | Redact |
| 136:8-12 | Not a confidential discussion | Denied |
| 137:10-19 | Imagine's business strategy | Redact |
| Exhibit 1000 | Imagine's business negotiations | Sealed |
| Exhibit 1001 | [same] | Sealed |

| | | |
|---|---|---|
| Exhibit 1200 | [same] | Sealed |
| Exhibit 2000 | Micron Agreement terms | Sealed |
| Exhibit 2002 | Imagine's pricing information | Sealed |
| Exhibit 2003 | Micron negotiations | Sealed |
| Exhibit 2005 | Negotiations | Sealed |
| Exhibit 2006 | Negotiations | Sealed |
| Exhibit 2007 | Imagine's Network Analysis for client | Sealed |
| Exhibit 2008 | Imagine's Network Analysis for client | Sealed |
| Exhibit 2009 | Imagine's business strategy and analysis | Sealed |
| Exhibit 2536 | Network process & performance | Sealed |

## Primary Health

Primary Health is not a party to this litigation but their President Dr. David Peterman was subpoenaed to testify at trial and to provide documents, some of which were entered into evidence. He discussed, among other things, (1) proprietary information on how Primary Health selects the physical location for their medical clinics; (2) Primary Health's financial investment in an electronic records system; (3) physicians who he identifies by name; and (4) Primary Health's productivity, recruiting strategies, and staffing model.

Dr. Peterman filed his Declaration identifying each confidential item by page and line number and explaining why the testimony needed to remain confidential. Dr. Peterman states that the testimony and exhibits he designates as confidential would "if disclosed, expose Primary Health to harm and strategic disadvantage in the marketplace." *See Supplemental Declaration (Dkt. No. 330).* After comparing Dr. Peterman's assertions with each page and line number that he seeks to seal, the Court agrees in large part (although not entirely) with his analysis.

There are compelling reasons for sealing much of what Primary Health seeks to seal. For example, in one portion of Dr. Peterman's testimony, he explains how he pays physicians in his network. *See Trial Transcript* at pg. 1249. In other testimony, he explains how Primary Health chooses the physical locations of its medical clinics. *Id.* at 1167-1171. This proprietary information is akin to a secret formula of ingredients for, say, a soft drink – it gives a competitive advantage to the holder of the formula, who has expended time and money to develop the formula. If the secret formula is revealed, the competitive advantage is lost. Thus, there are compelling reasons to keep much of this material sealed. Moreover, this proprietary information played no role in the Court's ultimate decision, and thus is not necessary for the public to understand the Court's analysis. Finally, it is important that Primary Health is not a party to this litigation and did not provide the information voluntarily but only subject to a subpoena.

On the other hand, Primary Health asks to seal Dr. Peterman's discussion of the difficulty in recruiting physicians to come to Canyon County. This information was testified to by a number of witnesses and is basically a matter of public knowledge. Moreover, it was crucial to the Court's analysis. Hence, the Court quoted from Dr. Peterman's testimony in its Findings of Fact and Conclusions of Law, and held that the information would not be sealed. *See Findings and Conclusions (Dkt. No. 464).*

Finally, there are a number of instances in Dr. Peterman's testimony where he names a certain physician and discusses his practice. If revealed, this could be professionally damaging and would serve no purpose – the identification of the

physicians by name adds nothing to the public's understanding of this case or to the Court's analysis.

With these guidelines in mind, the Court has prepared the table below that reviews each page and line number of the testimony and exhibits that Primary Health seeks to seal. The table gives a summary of the material at issue and describes the Court's ruling on whether that material should be sealed.

| Trial Testimony & Exhibits Primary Health Seeks to Seal | Summary of Testimony or Exhibit | Decision |
|---|---|---|
| 1159: 10-13 | Discussion of Primary Health's financial investment in an electronic records system – both the initial investment and the ongoing costs. Sensitive business information that would be damaging to Primary Health if disclosed. Not important to Court's decision or to public understanding. Compelling reasons exist to seal. | Redact |
| 1166:12 to 1171:10 | Discussion of proprietary information on the criteria Primary Health uses to select the physical locations for their clinics. Same analysis as with electronic record investment above. | Redact |
| 1173:3-21 | [same] | Redact |
| 1174:12 – 1177:17 | [same] | Redact |
| 1177:24 1178:1 1178:2 1178:3 1178:6 1178:13 | Discussion of the criteria a certain physician used to locate his practice. Primary Health seeks only to redact the name of the physician used in these lines. Compelling reasons exist to redact that name. | Redact only the name of the physician in these pages and lines. |

| | | |
|---|---|---|
| 1182:5 | | |
| 1179:12 to 1181:5 | Discussion of difficulties of recruiting in Canyon County. The Court cited some of this testimony in its Findings & Conclusions. The testimony is general in nature and in large part describes efforts that are public in nature. The testimony does name certain physicians, and their names should be redacted as unnecessary to understand this case. | Redact only the names of the physicians in these pages and lines. |
| 1182:2 1182:5 1182:10 | Discussing certain named physician. Primary Health seeks only to redact names in these lines and compelling reasons exist to do so. | Redact only the names of the physicians at these pages and lines. |
| 1182:25 to 1183:13 | Discussion of one specific Primary Health clinic and its financial performance. | Redact. |
| 1189:3 to 1190:10 | Discussion of the employment relationship between Primary Health and its physicians contracts with Primary Health | Redact |
| 1190:20 1190:23 | Discussion of certain named physician. Compelling reasons exist to seal. | Redact only the name of the physician at these lines. |
| 1191:5 to 1198:25 | Discussion of recruiting. Part of it comes from public sources like their own shareholder reports, and the rest cannot be deemed compelling for sealing purposes. | Denied. |
| 1201:10 to 1204:21 | Discussion of patient traffic projections for one specific Primary Health clinic in Nampa. This is sensitive and confidential business strategy information that would prejudice Primary Health if revealed and contribute nothing to the public's understanding of this case. Compelling reasons exist to seal. | Redact. |
| 1207:11 to 1208:11 | Discussion of physicians' transition to electronic record system at Primary Health. | Redact |
| 1208:17-23 | Discussion of productivity at Primary Health. This is sensitive business information that would damage Primary Health if disclosed. Compelling reasons exist to seal. | Redact |
| 1221:3 to 1225:23 | Discussion of Primary Health financial health and productivity. Same analysis as above. | Redact |

| Exhibit 1075 | Reveals confidential negotiations of Primary Health | Seal |
|---|---|---|
| Exhibit 1339 | This is Primary Health's confidential Operating Agreement containing sensitive information about their operations | Seal |
| Exhibit 1340 | Reveals confidential negotiations of Primary Health | Seal |
| Exhibit 1582 | [same] | Seal |
| Exhibit 2173 | Primary Health Board Report used internally only and discusses employment of physicians and the relationship with St. Luke's. | Seal |
| Exhibit 2174 | [same] | Seal |
| Exhibit 2175 | [same – discusses location of Primary Health clinics] | Seal |
| Exhibit 2177 | [same] | Seal |
| Exhibit 2179 | Discussion of Primary Health business strategy by President and accounting firm | Seal |
| Exhibit 2180 | Proprietary information concerning utilization of health services by zip code – used to select sites for Primary Health clinics. | Seal |
| Exhibit 2181 | [same] | Seal |
| Exhibit 2182 | Presentation concerning selection of site for Primary Health clinic made internally to management and Board only. | Seal |
| Exhibit 2550 | [same] | Seal |
| Exhibit 2551 | Board report concerning projected growth of Primary Health and productivity data. | Seal |

## Micron

Micron was not a party to this litigation. Through discovery subpoenas, the parties compelled Micron to provide confidential information and testimony. Specifically, Micron's Vice President of Human Resources Patrick Otte testified at the trial. He testified about Micron's efforts and strategy to provide a network of health care providers for its employees. While Micron's program was discussed at length during the trial, the Court's Findings and Conclusions contain no mention of it, and the program played no role in the Court's decision. Hence, the public can have a full understanding of this case without revealing how Micron established a network of health care providers.

Moreover, the information is highly confidential. Patrick Otte explains that it reveals Micron's strategy in negotiations and pricing a system of health care for its employees. *See Otte Declaration (Dkt. No. 304-1)* at pp. 2-3. Micron must continue to negotiate with health care providers and payers, and this information would compromise their negotiating strength. In addition, this is proprietary information that could be exploited by competitors.

The Court's review of Otte's trial testimony – and the associated exhibits – is summarized in the table below. The Court's rulings as to each matter that Micron seeks to seal or redact are set forth in that table.

| Testimony Or Exhibit | Subject Matter | Decision |
|---|---|---|
| 559:6-25 | Discussion of how often Micron's on-site medical clinic was used by Micron employees, including specific numbers of patient visits. | Redact |
| 560:11-21 | Discussion of Micron's pricing in its on-site clinic and how that pricing affected patient visits | Redact |
| 561:5 to 562:3 | Discussion of Micron's overall strategy in starting its own network of health care providers for its employees. | Redact |
| 562:19-21 | Reveals Micron's financial budget figures. | Redact |
| 565: 5 to 566:6 | Discussion of bid process and Micron's strategy in soliciting bids from health care providers to develop its network. | Redact |
| 566:16 to 567:2 | Reveals Micron's analysis of specific bids to be part of Micron's health care network, and explains why Micron chose some health care providers over others. | Redact |
| 567:19 to 570:18 | Describes challenges to setting up Micron's network and the effect on Micron's employees | Redact |
| 572:7 to | Discussion of (1) challenges Micron faced in | Redact |

| | | |
|---|---|---|
| 587:20 | developing its network while at the same time its revenues were declining; (2) a comparison of its negotiations with different health care providers; (3) a review of the costs of the network, the savings it generated, and its impact on Micron's employment. | |
| 591:9 to 592:19 | Discussion of Micron's future plans for its health care network and its evaluation of the Saltzer transaction's impact on its own network. | Redact |
| 601:14 to 602:3 | Discussion of Micron's pricing of network services and its impact on Micron employees | Redact |
| 602:16 to 604:1 | Discussion of Micron's network strategy and evaluation of its success. | Redact |
| 604:17 to 615:15 | Discussion of how the Micron employees were using the various tiers of the network for health services, the criteria Micron was using to evaluate the quality of its services, and negotiations over modifications to the network. | |
| 617:1-6 | Discussion of negotiations between Micron and health care provider | Redact |
| 1345:8-16 1346: 5-13 1355: 25 to 1356:18 1358: 12-20 1411: 8-15 1412:9 | Discussion by Dr. Dranove (expert) analyzing Micron's health care network. This contains sensitive business data that could damage Micron if disclosed. It was not important to Court decision or to public understanding. Compelling reasons exist to seal. | Redact |
| Exhibit 12 | Document relating to negotiations between St Luke's and Micron | Seal |
| Exhibit 1201 | [same] | Seal |
| Exhibit 1234 | [same] | Seal |
| Exhibit 2009 | Letter regarding termination by St. Luke's | Seal |
| Exhibit 2201 | Document relating to negotiations between St. Luke's and Micron | Seal |

## CONCLUSION

The Court has now resolved the requests for sealing. The Court will direct the

parties to publically disclose the material previously sealed in accord with the decision

set forth above, and to make that disclosure within 30 days from the date of this decision. The parties shall contact the Clerk's Office to determine if the best method for public disclosure is a filing on CM/ECF or a filing on the Court's website (with a notation to that effect on CM/ECF). The Court assumes that even though it has limited jurisdiction because of the appeal to the Ninth Circuit, the Court retains jurisdiction to set this time limit and manage the logistics of the public disclosure. The parties are free to file a motion if the Court has inadvertently overstepped the bounds of its limited jurisdiction.

## ORDER

In accord with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the parties shall publically disclose the transcripts and exhibits as set forth above within thirty (30) days from the date of this decision, and shall contact the Clerk's Office as set forth above.

DATED: July 3, 2014

B. Lynn Winmill
Chief Judge
United States District Court